[Civ. No. 2669.    Third Appellate District.—December 5, 1923.]

## GAIUS TAYIAN, Appellant, v. YOUGHAPER TAYIAN, Respondent.

[1] MARRIAGE — ANNULMENT — SEPARATE MAINTENANCE — PLEADING— JOINDER OF ACTIONS.—In an action by the husband for annulment of the marriage on the ground of fraud, a cross-complaint by the wife for separate maintenance, predicated upon the desertion of her by the husband, is authorized.

[2] ID.—JUDGMENT—EVIDENCE—APPEAL.—In such an action, a judgment to the effect that defendant is entitled to a decree of separation from plaintiff and to a specified sum per month for separate maintenance, together with a further specified sum for attorney's fees, cannot be sustained on appeal where the record shows that the defendant introduced no evidence in support of the allegations of her cross-complaint for separate maintenance or as to her financial conditions or requirements for support, and there is no testimony satisfactorily showing the ability of plaintiff to pay the monthly allowance awarded defendant.

[3] ID.—WEIGHT OF EVIDENCE—DISCRETION OF TRIAL COURT—JUDGMENT—APPEAL—PRESUMPTION.—In such an action, while the trial court is at liberty, in the exercise of its functions as a trier of the questions of fact submitted at the trial, to disregard the testimony presented by the plaintiff as carrying with it no probative force, and, where the trial court has found against plaintiff, it is to be presumed, on appeal, that the trial court did disregard such testimony, or, if believing it, regarded the testimony as insufficient, as a matter of law, to entitle him to judgment upon

his complaint, a judgment in favor of defendant, in accordance with the allegations of her cross-complaint, cannot be sustained, where the only evidence in the case is that presented by plaintiff and it is to the effect that defendant deserted plaintiff.

[4] ID.—ABSENCE OF CAUSE OF ACTION FOR DIVORCE—ERRONEOUS SEPARATE MAINTENANCE JUDGMENT.—In such an action, where it is not shown that plaintiff either willfully deserted or willfully failed to provide for defendant, or that she has any cause of action of divorce as provided by section 92 of the Civil Code, the trial court is not justified in granting her a decree for separate maintenance.

APPEAL from a judgment of the Superior Court of Fresno County. S. L. Strother, Judge. Reversed.

The facts are stated in the opinion of the court.

Julius Hansen and M. K. Harris for Appellant.

Ohannesian & Ohannesian for Respondent.

HART, J.—The plaintiff brought this action to secure a decree declaring the marriage between him and the defendant void upon the ground of fraud and for the annulment of said marriage.

The complaint, which was filed January 10, 1922, alleges that the parties intermarried in Fresno County on the twenty-ninth day of September, 1921; that the said marriage was the culmination of fraudulent acts and willful misrepresentations practiced upon the plaintiff by one T. G. Brave and his wife, uncle, and aunt of the defendant. The gist of the charge of fraud is that the said T. G. Brave and wife conducted with the parents of the plaintiff negotiations looking to and eventuating in the intermarriage of the parties; that said T. G. Brave and wife represented to the plaintiff and his parents that the defendant was at the time referred to between fourteen and fifteen years of age and that she was and had always been "a true Christian and a virtuous girl," whereas, so the plaintiff alleges, he discovered after his marriage with the defendant that she was not "a true Christian and a virtuous girl." The complaint

4. Authorities discussing the question of alimony in suit to annul marriage, notes, 102 Am. St. Rep. 710; 5 Ann. Cas. 380; 20 Ann. Cas. 1347; 3 L. R. A. (N. S.) 192; 26 L. R. A. (N. S.) 500.

alleges that the defendant deserted and abandoned plaintiff and refused to return to the plaintiff. Other allegations tending to state a case of fraud as the means by which the marriage was brought about are contained in the complaint, but, for the purposes of this decision, a sufficient statement of the ground upon which the plaintiff sought to have the marriage annulled has now been given.

The defendant, answering the complaint, admitted the fact of the marriage between plaintiff and her at the time stated in the complaint, but denied each and every other allegation of the last-named pleading. She also filed a cross-complaint, in which she alleged that the plaintiff, on the fourth day of December, 1921, deserted and abandoned her and that he "has ever since lived separately and apart from this defendant, and has failed, refused and neglected to provide this defendant with the necessities of life." It is further alleged in the cross-complaint that there is no community property belonging to the parties and that there are no children, the issue of said marriage. It is likewise alleged that the defendant is without means of support and that she has no home or relatives with whom she may reside; that "she is now living at the home of T. G. Brave and his wife, Araxie Brave, and is dependent upon the charity of friends for her support and maintenance," etc. The prayer of the cross-complaint is that the relief sought by the plaintiff in his complaint be denied; that the marriage between the plaintiff and the defendant be adjudged valid, and that the plaintiff "be required to pay to this defendant the sum of $100 per month for her permanent support and maintenance, and the further sum of $150, attorneys' fees, and for costs and expenses incurred by this defendant in the defense of this action," etc.

The plaintiff moved to strike the cross-complaint from the files on the ground that in an action for annulment of a marriage a cross-complaint for separate maintenance is not permissible. The motion was denied, and thereupon the plaintiff answered the cross-complaint denying all the essential averments thereof, except the allegation that there is no community property belonging to the parties and the further allegation that there is no issue of said marriage.

The findings were against the plaintiff on the allegations of fraud as the inducing cause of the intermarriage of the

parties and also as to the allegation that the defendant deserted plaintiff. As to the cause of action stated in the cross-complaint, the court found that the plaintiff willfully and without cause deserted and abandoned defendant "and still continues so to do"; that the plaintiff is a "strong and able-bodied man and is capable of earning good wages," and that defendant "had not and has not any means of support"; that the plaintiff is the owner of twenty acres of land, free and clear of all encumbrances, situated in Fresno County.

As a matter of law, the court's conclusions are, among other things, that plaintiff, since the fourth day of December, 1921, "has been guilty of willful neglect of the defendant, and that defendant is entitled to a decree of separation from plaintiff herein and to the sum of $75 per month, separate maintenance, commencing from the first day of January, 1923, together with $150 attorneys' fees."

Judgment passed accordingly.

The appeal here is by the plaintiff from so much of said judgment as awards defendant as for separate maintenance, the sum of $75 per month.

The points urged for a reversal are: (1) That the court erred in denying the motion of the plaintiff to strike from the files the defendant's cross-complaint; (2) That the findings and the judgment are not sufficiently supported.

[1] 1. An action by the wife for separate maintenance is authorized by section 137 of the Civil Code. Said section reads in part as follows: "When an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself and her children, or to prosecute or defend the action. When the husband willfully deserts the wife or when the husband willfully fails to provide for the wife or when the wife has any cause of action for divorce as provided in section ninety-two of this code, she may, without applying for a divorce, maintain in the superior court an action against him for permanent support and maintenance of herself or of herself and children."

It will be noted that said section includes a provision authorizing the court in the exercise of its discretion in a divorce action to require the husband to pay as alimony any money necessary for the support of the wife and her

children and to prosecute and defend the action and also in connection therewith includes a provision authorizing an action by the wife for separate maintenance and support, independently of an action for divorce. It is true that the right to maintain the latter action comes entirely from the statute, but the principle at the bottom of it is the right of the wife to be provided with support, suitable to the condition of the parties, at the hands of the husband, who holds the family "purse-strings." The two proceedings, although in a sense different, are cognate in their nature, and, manifestly, relate to the same "transaction." Alimony merely means provision for the support of the wife in cases of divorce, either temporary or permanent, as the exigencies of the case warrant. In other words, it is "an allowance made to a wife out of her husband's estate or income for her support upon her divorce or legal separation from him or during a suit for the same." (Bouvier's Law Dictionary.) It is an incident of divorce. Divorce or separation without divorce and alimony spring from the same root, to wit, the marriage relation. It has repeatedly been held that the right of a court to allow alimony in actions for divorce may proceed from its inherent power to make such provision in such cases and, therefore, the court could make an allowance of alimony in the absence of express statutory authority for such action. (*Dunphy* v. *Dunphy*, 161 Cal. 87, 90, 91 [118 Pac. 445].) Of course, there must be a valid marriage, or a valid marriage must be pleaded and, where permanent alimony is sought, proved. The same rule applies to an action in which the annulment of the marriage is the relief asked for. In such cases the marriage is to be regarded as perfectly valid until the ground for the annulment is established. (See *Dunphy* v. *Dunphy*, 161 Cal. 87 [118 Pac. 445], and cases therein cited.) In this case all the pleadings aver and admit that, on the twenty-ninth day of September, 1921, the marriage between the plaintiff and the defendant was duly solemnized by a minister of the Gospel, duly authorized to perform such a ceremony. Upon the face of the pleadings there was a legal marriage. The defendant in her cross-complaint stated that the plaintiff had deserted her, and by her answer to the complaint denied the right of the plaintiff to an annulment of the marriage contract

upon the ground stated in his complaint and asked for a decree denying him the relief for which he prayed. It seems to us that there could not have been a more appropriate legal course on her part in the action, under the circumstances (the husband having shown that he did not desire that their marital relations should further be continued or perpetuated), than that which she did pursue, to wit, to seek a decree requiring him to provide her with sufficient means for her maintenance and support in case the court denied the relief sought by the plaintiff in his complaint. At any rate, it is perfectly clear that a complaint by the husband either for a divorce or for an annulment of the marriage contract and a cross-complaint by the wife, for separate maintenance are so correlated, so far as the subject matter of the litigation is concerned, that the two actions necessarily involve the same "transaction," within the meaning or contemplation of section 442 of the Code of Civil Procedure. It would be unreasonable, where the husband seeks a divorce from his wife or an annulment of the marriage between him and his wife and the latter defends against the action, to require the wife to proceed in an independent suit for separate maintenance, if such relief she desired to secure. Such procedure would certainly fly in the face of the general rule following from the establishment of the reform procedure that all matters of a cognate nature or essentially growing out of the same transaction or subject matter of the suit ought to be tried and determined in one and the same suit.

[2] 2. The contention that the findings upon which that part of the judgment appealed from is predicated are devoid of sufficient evidentiary support must be sustained. In fact, so far as the present record discloses, there was no trial of the issues made by the cross-complaint and the answer thereto.

The record shows that, on the opening of the trial of the case, the attorney for the defendant, addressing the court, said: "I assume that the court has looked over the pleadings—the cross-complaint for separate maintenance," to which the judge replied: "That will not come in on plaintiff's case," to which statement the said attorney agreed. The trial was thereupon proceeded with upon the theory as so suggested and agreed to by the court and counsel for

the defendant and as tacitly acquiesced in by counsel for the plaintiff—that is the trial of the issues made by the cross-complaint and the answer thereto was not then proceeded with.

The only testimony given in the case was that which was presented by the plaintiff on the issue of the annulment of the marriage, and, incidentally, as to the alleged desertion and abandonment of the plaintiff by the defendant. The witnesses so giving said testimony were the plaintiff, his parents and his sister. The defendant was not called to the witness-stand, nor, as is to be implied from what is said above, did she offer any testimony or evidence of any character in her own behalf.

During the course of his examination the plaintiff testified that, after his marriage and immediately upon the return of himself and wife from a week's "honeymoon," he took his wife to the home of his parents, by whom he was then employed, receiving the sum of $75 per month for his services, and with whom he intended that they should reside, and did reside until her departure therefrom and return to the home of T. G. Brave, on the fourth day of December, 1921; that he accompanied his wife to the house of the Braves on the day just named, but, when he was ready to return to the home of his parents, she refused to go with him, both she and T. G. Brave declaring that she intended to remain with her aunt and uncle at the latter's home; that, about a week later, accompanied by a minister of the Gospel, he went to the home of the uncle and aunt of the defendant, and, upon meeting the latter, stated to her that he was there for the purpose of taking her home, and that she refused to return with him, offering no excuse therefor and merely stating to him that he "could get a divorce." On cross-examination the plaintiff testified as follows:

"Mr. Ohannesian: Then I wish to ask a few questions as to the ownership of the property. Q. What property have you got, Mr. Tayian, what property have you? A. That 20 acres. Q. There is no mortgage on those 20 acres I understand? A. No, there was no mortgage. Q. How much of a crop did you have off the place this year? A. Oh, about 900 pounds of peaches, I think. Q. 900 pounds of peaches? A. Yes. Q. But aside from that

place you were working for your father and getting about $75 a month, is that correct? A. That was in addition, but I put something in the property. I didn't get anything extra, no. Q. You have not paid your wife any money for the past five or six months, have you? A. No, Mr. Ohannesian: That is all.''

On redirect examination he testified:

''Mr. Hansen: Q. This $75 a month that you are receiving from your parents, do you get that and board, also? A. No. That is the wages for a whole month. Q. Well, have you received any of that money yet from your parents? A. For the last six months, no. Q. What do you have to pay, if anything, for board? A. About $30 a month, I suppose; at most 30. Mr. Hansen: I think that is all. Mr. Ohannesian: Q. Did you say about $30 a month? A. Yes, 30. Q. Well, don't you know what you were paying your parents? A. Well, 30. Of course they do my washing and things like that which I never considered. Q. Well, have you paid your parents any money for your keep? A. Yes, sir. Q. How much did you pay for last month? A. Thirty dollars a month is what I paid. Q. Did you pay $30 for last month? A. Yes, sir. Q. Have you paid anything for this month yet? A. No. This month ain't finished. Mr. Ohannesian: Oh, the month is not finished yet. Well, that is all. The Court: That is all. Call your next witness.''

After the plaintiff was excused as a witness his parents and his sister were each in turn called to the witness-stand. When they had completed the giving of their testimony the plaintiff's case was rested, and thereupon the attorney for the defendant stated to the court that he did not ''intend to put in any testimony [referring, as we are justified in inferring, to the plaintiff's action], but if the court desires to hear any evidence relative to our action, cross-complaint, for separate maintenance, I will do so,'' to which the court rejoined: ''Well, I suppose your evidence would be about the same as on these various hearings.'' Said attorney, replying, stated, in effect, that he was prepared to prove, in support of the averments of the cross-complaint, that the defendant said to the plaintiff at the time that he requested her to return to the home of his parents that her reason for not returning with him was because

she desired him first to provide for themselves a home at some other place than that of his parents; that he also desired the defendant to testify to a conversation that took place between her and the plaintiff's sister. The court's response to these suggestions was: "I don't think there is anything in the conversation with the sister. . . . On the complaint, judgment will be for the defendant." Following this was a colloquy between court and counsel on both sides, in the course of which plaintiff's attorney objected to the issues made by the cross-complaint and answer thereto being tried in this action on the ground above stated and considered, and the court, in effect, overruled the objection, saying: "I don't think it is necessary to introduce any further testimony." Thereupon, and after further remarks by the judge, not material to the present inquiry, the court rendered and announced its judgment, upon the cross-complaint, awarding the defendant the relief as above explained.

Annexed to the transcript is the court reporter's certificate to the effect that said transcript sets forth or comprises all of the testimony taken at the trial of this action, and of which there has been presented hereinabove substantially all the testimony which may warrantably be said to bear upon the defendant's alleged desertion of plaintiff and refusal to return to him and upon the question of the plaintiff's ability to pay the monthly amount adjudged by the court to be paid the defendant by the plaintiff for her permanent maintenance and support.

It will be observed that there is not a word of testimony in this record contradicting or to any degree tending to contradict the plaintiff's testimony that the defendant deserted him. There is not a line or word of testimony contradictory of the plaintiff's testimony that the defendant, a few months after the marriage, went to the home of her relatives and there remained and refused, after he had besought her to do so, to return to the plaintiff's home and there live with him. There is no testimony satisfactorily showing that the plaintiff was or is able to pay the monthly sum of $75 to the defendant as in support of the latter. The testimony, as will be noted, is that he owned a 20-acre tract of land and upon that land he raised, during the year 1922, 900 pounds of peaches and that he was receiving, as

services performed for his parents upon their place, the sum of $75 per month. It was not shown how much the land referred to was worth or how much he received for the peaches raised thereon in the year 1922, nor was it shown whether he derived a yearly income in any considerable amount or, indeed, made any profit from the peaches grown on said land. He testified that out of the $75 per month he was receiving as wages he paid his parents for his board and other accommodations the sum of $30 .per month, leaving the sum only of $45. It was not shown whether the defendant was financially in such a condition as to require for her support the sum of $75 per month.

[3] It is true that the trial court was at liberty, in the sound exercise of its functions as a trier of the questions of fact submitted at the trial, to disregard the testimony presented by the plaintiff upon the question of the defendant's alleged desertion of him as carrying with it no probative force. Indeed, it is to be presumed, from the result arrived at below, that the court either did disbelieve the plaintiff's testimony as to the alleged desertion by defendant, or, if believing it, regarded his whole testimony as insufficient, as a matter of law, to entitle him to a judgment upon his complaint. But in either case the result would be the same, to wit, that there would be left in the record no evidence upon which the court could predicate any other decision than that neither the plaintiff nor the defendant was entitled to the relief asked by their respective complaints. Upon the face of the evidence, however, no other conclusion is justified upon the question of desertion than that the defendant, without just or any cause, deserted the plaintiff. In the extended colloquy between the court and counsel, above referred to, and after the plaintiff's case was concluded, the court stated, when counsel for the defendant proposed to introduce proof upon the cross-complaint, that any further evidence which might be introduced in support of the allegations of the said complaint would involve a mere repetition of evidence received "on these various hearings." From this it may be assumed that at some other hearings of matters incidentally arising in the action—perhaps on an application for alimony *pendente lite*—the court received evidence in some form or another which applied with more or less pertinency to some

64 Cal. App.—41

of the matters set forth by the several pleadings filed in the action. But whatever might have been the nature of the occasions calling for such hearings, the fact is that any evidence received at the "various hearings" referred to by the court is not embraced or set forth in the transcript here, unless the very same evidence certified to this court in the present transcript was received at said "various hearings." **[4]** However, it is very clear that there is absolutely no evidence in this record which justified the court in granting the defendant the relief involved in the judgment entered in her favor. In other words, it was not shown that the plaintiff either willfully deserted or willfully failed to provide for the defendant, or that she had any cause of action for divorce as provided by section 92 of the Civil Code. "The wife cannot abandon the dwelling place which he (the husband) may have provided for her, if it be a reasonable place, and then seek support at his expense by virtue of section 137 of the Civil Code; nor is she entitled (under such circumstances) to maintain the action for his mere neglect to provide her with suitable support. Hence, if, at the time she institutes the action, she is living separate and apart from him, it is essential for her to show that it is by reason of his desertion, or that by reason of his cruelty, or threats of bodily harm, she was forced to leave the family dwelling place." (*Hardy* v. *Hardy,* 97 Cal. 125, 127, 128 [31 Pac. 906]. See, also, *McMullin* v. *McMullin,* 123 Cal. 653 [56 Pac. 554]; *Volkmar* v. *Volkmar,* 147 Cal. 175 [81 Pac. 413].)

The judgment is reversed and the cause remanded.

Plummer, J., and Finch, P. J., concurred.