[Civ. No. 3424.   Third Appellate District.—February 9, 1928.]

SIDNEY V. SMITH, Jr., Petitioner, v. SUPERIOR COURT OF YUBA COUNTY et al., Respondents.

Devlin & Devlin for Petitioner.

Charles A. Wetmore, Jr., for Respondents.

HART, J.—This is an application for a writ of review for the purpose of having reviewed, annulled, and set aside a proceeding and the judgment therein entered adjudging the petitioner guilty of contempt of court in that he violated a certain order of the respondent Court fixing and awarding alimony to be paid to one Elaine T. Smith by the petitioner in an action for divorce in said Court between the former and the latter.

From the petition and the return thereto the general facts may be taken and stated as follows: The petitioner and said Elaine T. Smith intermarried on the fourth day of June, 1917. Three children were born to said parties, as the issue of said intermarriage, one son and two daughters, who were minors at the time of the trial of the action culminating in the divorcement of the parties. On or about the twenty-

fourth day of June, 1926, an appeal was pending from the judgment in a certain action (the nature of which is not clearly made to appear by this record, but it is fairly infêr-able that it was an action for maintenance) between Elaine T. Smith, plaintiff, and the petitioner here as defendant and at the same time there was pending in the respondent Court an action for divorce, instituted by said Elaine against the petitioner on the twenty-fourth day of June, 1926. The grounds upon which the divorce was sought by plaintiff in said action were wilful neglect and extreme cruelty. It was alleged therein that the parties separated on the fifth day of June, 1926, and also that "there is no community property existing between plaintiff and defend-ant." By his answer, which was filed the day the complaint was filed, the petitioner admitted all the allegations of the complaint but those charging wilful neglect and cruelty, and those he denied. Said action came on for trial before the court, sitting without a jury, on the twenty-fourth day of June, 1926, and an interlocutory decree was entered declaring the plaintiff (Elaine T. Smith) to be entitled to a divorce from the petitioner here, Sidney V. Smith. After so declaring and disposing of the matter of the custody of the three minor children of the parties, said decree pro-ceeded:

"It is further ordered, adjudged and decreed, that, com-mencing with the first day of July, 1926, and on the first day of each and every month thereafter, continuing for a period of one year, or twelve months, defendant, Sidney V. Smith, Jr., shall pay to plaintiff as alimony the sum of one hundred dollars."

The petition alleges that, on the twenty-fourth day of June, 1926, the parties entered into a written stipulation with reference to the disposition the court might make of the custody of their minor children by and in its inter-locutory decree, in the event that such a decree was entered upon sufficient competent testimony; that, at the same time, said parties entered into a further written agreement as follows:

"That in consideration of the dismissal of the appeal here-tofore taken on the judgment obtained by the wife against him in the Superior Court of the State of California, in and for the County of Yuba, and his agreement not to seek re-

payment of any moneys heretofore paid by him to the wife under said judgment, the wife hereby releases and discharges the husband from all claims and demands of every kind and nature, whether for moneys owing or to any community property or alleged community property in his possession or control, or for alimony or for maintenance or support heretofore accrued or hereafter to accrue, and for said consideration the wife further agrees that the husband may have undisturbed the custody and control of the children of the parties.''

On June 6, 1927, the said Elaine T. Smith served the petitioner herein with written notice that she intended to and would apply to the respondent Court for an order modifying the interlocutory decree, in so far as it related to the award of alimony to said Elaine, fixing and awarding to her the sum of $250 per month ''as and for permanent alimony, commencing on the 1st day of July, 1927, and continuing thereafter monthly, until the further order of said court'' and also would apply for a further order requiring the petitioner to pay said Elaine $250 ''as and for her counsel fees and such allowance for costs as might be necessary to pay the expenses of the proceedings upon said motion.'' On the nineteenth day of September, 1927, pursuant to said notice, counsel for said Elaine moved the court for the modification and for counsel fees, as indicated in said notice, and thereafter, and on the twenty-first day of October, 1927, respondent Court made and entered an order modifying the order contained in the interlocutory decree relating to alimony by fixing and allowing alimony to said Elaine and directing that the same be paid by the petitioner herein to the former, the sum of $175 per month, ''payable monthly commencing on the 1st day of July, 1927, and monthly thereafter until the further order of said court, and further allowing to the said Elaine T. Smith the sum of $200.00 as and for attorneys' fees in said proceeding; . . . and it is further ordered that the provisions of said order be incorporated in and be made a part of the final decree of divorce.'' Thereafter, and on the twenty-fourth day of October, 1927, said court made and entered its final decree of divorce in said action, and included in said decree the order modifying the interlocutory decree as to alimony. The petition alleges that the petitioner refused and ''wholly

failed to pay or comply with said attempted and purported order for the payment of alimony and counsel fees" provided in the said modified order and in the final decree, and that on the fourth day of November, 1927, the respondent, Honorable K. S. Mahon, Judge, presiding *pro tempore* in and for the respondent Court, "made and issued an order directing petitioner herein to appear before said court, on November 14th, 1927, at 10 o'clock A. M. of said day to show cause, if any he might have, why he should not be punished for contempt of said court for failure" to comply with the terms of the final decree as to alimony; that, on said day, petitioner appeared before said court and said Judge *pro tempore,* and that, examining the petitioner upon his oath and the evidence, oral and documentary, introduced in said proceeding, the petitioner was found and adjudged guilty of contempt for refusal and failure to comply with the mandates of said order of modification contained in the final decree of divorce as to alimony and counsel fees, and his refusal and failure to pay all sums claimed to be then due under the terms of said modified order, and ordered petitioner to be committed to the custody of the sheriff of Yuba County for imprisonment in the county jail of said county until payment in full of said moneys so purporting to be due should be made by him; that thereafter the respondent Court and respondent Judge *pro tempore* made a further order "substantially to the same effect, except that petitioner was therein found and declared to be able to pay the moneys therein mentioned." It is alleged in the petition that, upon the examination of petitioner and from other evidence received in said contempt proceedings, it was shown that petitioner is without financial means or the ability to pay said money or any money which might become due under the order modifying the original order fixing and awarding alimony to said Elaine T. Smith.

The return consists of the entire record of the proceedings had on the citation for contempt. The order adjudging petitioner guilty of contempt and committing him to imprisonment in the county jail because of such contempt is in the following language:

"And it further appearing to this Court that on the 21st day of October, 1927, the above entitled Court duly made and entered its order requiring the defendant above

named to pay to the plaintiff, commencing as of the date July 1st, 1927, the sum of One Hundred and Seventy-five Dollars per month, payable monthly, as permanent alimony, and the further sum of Two Hundred Dollars as and for her counsel fees, and that said order was duly entered by the Clerk of the Court on the 21st day of October, 1927, and that said defendant ever since said time has wholly failed and refused and still does fail and refuse to comply with the order of the Court aforesaid, without any just or legal ground or cause to show why he has not complied with such order of this Court, and defendant at all of the times mentioned was and he now is able to pay the sums of money so ordered by this Court; and it further appearing to this Court that there is now due under the terms of said order as aforesaid to the plaintiff from said defendant the sum of Eight Hundred and Seventy-five Dollars on account of permanent alimony, and the sum of Two Hundred Dollars as and for her counsel fees;

"Wherefore, the Court finds that because thereof said defendant, Sidney V. Smith, Jr., is guilty of contempt of this Court; and it is adjudged that unless said defendant pay to the plaintiff within five days the sum of Ten Hundred and Seventy-five Dollars the amount due plaintiff under said order, as aforesaid, it is adjudged that said defendant, Sidney V. Smith, Jr., be punished for such contempt by imprisonment in the county jail of the County of Yuba, State of California, until such time as he fully complies with said order."

The sole office of the writ of review, as is obvious from the description of that writ by our code (Code Civ. Proc., sec. 1068), is to try the question of jurisdiction in a particular case—that is, to examine the question whether any tribunal exercising judicial functions has in a given instance exceeded its lawful jurisdiction. It is not, nor could it be, disputed that the Superior Court or any court may punish as for contempt the violation of any order, judgment, or mandate of any nature which such court by the law is vested with the jurisdiction to make, pronounce, enter, or issue, and may, where a judgment of contempt of its processes has been made and entered, impose a sentence of imprisonment, or a fine, or both, upon the offending party (Code Civ. Proc., sec. 1218), or may, as in the

present case, employ the power to punish for contempt as a coercive measure to compel the performance of an act enjoined by a judgment or order which it has the lawful jurisdiction to make by imprisoning the offender until he complies with such order or judgment. (Code Civ. Proc., sec. 1219.) ■ It is the general rule, that when it is found and determined that the tribunal whose judgment or act is under examination through the agency of said writ has remained within the bounds of its lawful jurisdiction in rendering the judgment or doing the act thus attacked, the inquiry is at an end, although it may appear that error or irregularities were committed in arriving at the result complained of. But the rule as thus stated must be understood as being subject to this qualification: That even where, under the law, the tribunal is vested with jurisdiction of and over certain matters or subjects, yet, before it can perform an act or make and enter an order or a judgment in the exercise of its general jurisdiction of and over such matters or subjects, there must first be made to appear the jurisdictional facts essential thereto. While the Superior Courts have jurisdiction to hear and determine as at *nisi prius* issues of fact and law in all cases which are not by law made cognizable by the courts inferior thereto, no one would for a moment hold that said courts would have jurisdiction to hear and determine such cases in the absence of pleadings or the formal presentation or the tendering of the issues of fact or of law to be tried. ■ So, in cases of contempt, the essential jurisdictional facts must be shown to exist before a court, in the exercise of the general jurisdiction conferred upon it by law, can acquire the right to exercise such general jurisdiction in a given or particular case. ■ These general observations result from the contention of counsel for the respondents to the effect that, since admittedly the respondent Court has the jurisdiction, not alone conferred by law but inherently, to protect, maintain, and preserve its dignity or enforce obedience to its processes by proceedings in contempt, there cannot legally be a review of the proceedings below, in so far as is concerned the question of the sufficiency of the proofs to uphold the order or judgment of contempt or the question of the legal propriety of the evidence upon which the order or judgment was and is predicated or other errors which

may have been committed in conducting the investigation. As to the question of the admissibility of evidence or other errors committed in the trial of the issue, counsel for respondents is right. As to the other proposition, as stated, he is in error. And what counsel for the petitioner contend here is, not that the court is not clothed with power to hear and determine proceedings in contempt of its decrees, orders, or processes, but that the jurisdictional facts essential to the upholding of the order or judgment of contempt in the present case were not shown at the hearing thereof. In truth, the simple question in effect is whether the proofs support the judgment.

Several propositions in support of the petition herein are urged. Stated in the order in which they are presented in the briefs filed on behalf of the petitioner they are: 1. That the respondent Court was without jurisdiction to award counsel fees for professional services rendered on behalf of Elaine T. Smith in the proceeding for the modification of the alimony clause in the interlocutory decree; 2. That this being so, the judgment for contempt must fall, since the petitioner was adjudged guilty of contempt for refusing to do two things, conjunctively set forth in the final decree, to wit: to pay the accumulated alimony under the modified order as to alimony, and to pay counsel fees of $200 awarded for legal services rendered Elaine T. Smith in the application for further alimony. The argument as to this is that, where two distinct acts are required by the order or the decree to be done or performed and they are therein stated in the conjunctive form, and one of such acts was beyond the jurisdiction of the Court to require to be done, the entire judgment purporting to be predicated upon the order or judgment requiring both acts to be performed is invalid, even if it be true that it was within the jurisdiction of the Court to order one of such acts to be performed, since, as counsel argue, "the word 'and' required both (the acts ordered to be done) to be valid before the order of contempt based upon both would be valid," citing *Kraner* v. *Halsey*, 82 Cal. 209, 212 [22 Pac. 1137] ; 3. That, in fixing and awarding alimony in the interlocutory decree the Court exhausted its jurisdiction to make any further order or adjudication as to alimony for the wife; 4. That the evidence shows that the petitioner is without financial means

or property from which he can secure the means necessary to enable him to pay the amount awarded.

█ 1. So much of the modifying order allowing Elaine T. Smith the sum of $200 as counsel fees for the professional services of her attorney for inaugurating and prosecuting the proceeding eventuating in the making of said order is void for the reason that the professional services for which said allowance was made were fully performed before the awarding of such fees. █ In other words, the fees were allowed for past professional services, and the Court in divorce cases or proceedings arising therein collaterally or otherwise is without jurisdiction to award counsel fees after the professional services have been performed. (Civ. Code, sec. 137.) So much of said section as is pertinent here provides: "When an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself and her children, or to prosecute or defend the action."

Of course, it will not be doubted that the situation presented here falls within the reason underlying the foregoing language of said section. Our higher courts have uniformly held, in construing said section, that the award of attorneys' fees to the wife in divorce actions or for maintenance without a divorce must be made prior to the performance of the services compensation for which is asked, the reason given being that such an allowance for past services is "clearly not *necessary* to enable the wife . . . to prosecute . . . the action." (*Lacey* v. *Lacey,* 108 Cal. 45, 46 [40 Pac. 1056]; *Stampfli* v. *Stampfli,* 53 Cal. App. 126, 132 [199 Pac. 829]; *Loveren* v. *Loveren,* 100 Cal. 494 [35 Pac. 87]; *Wickland* v. *Wickland,* 19 Cal. App. 562 [126 Pac. 507]; *Sheppard* v. *Sheppard,* 15 Cal. App. 619 [115 Pac. 751].)

█ 2. There is no merit in the proposition that, because the order allowing counsel fees is invalid, the entire modifying order and consequently the judgment of contempt based thereon are invalid. The central object of the application for a modification of the interlocutory decree was to secure an increase in the amount of alimony awarded the wife and to make it permanent, or until otherwise ordered by the Court. The application for counsel's fees was merely incidental thereto. Both matters are, in their nature,

so far as the effect thereof is concerned, entirely separate and distinct. They were not interdependent. The jurisdiction of the Court to award alimony was in no sense dependent upon whether the Court had jurisdiction to award counsel fees. There is nothing ambiguous in the language of the order. It is plainly manifest that the Court intended to make both awards, and that it succeeded in making a valid order as to alimony but failed, for technical legal reasons, to make the other. It seems to us that it would be carrying technicality to a most unreasonable extreme to hold that the fact that the futile attempt to award counsel's fees has the effect of destroying the validity of the order as to alimony. The case of *Kraner* v. *Halsey, supra,* held that, as one of the grounds of the demurrer to the complaint was stated conjunctively, viz.: that said complaint was "uncertain, ambiguous *and* unintelligible," all three grounds would have to exist to justify an order sustaining the demurrer. We do not think that that case is in point here.

3. The allowance made by the Court in its interlocutory decree as for alimony for the support of Elaine T. Smith, wife of the petitioner, for a specified period was not conclusive, or, in other words, the Court's power in that particular was not exhausted by reason of the provisions in said decree for the support of the wife. In *Tayian* v. *Tayian,* 64 Cal. App. 632, 636 [222 Pac. 377], it is said: "Alimony merely means provision for the support of the wife in cases of divorce, either temporary or permanent, as the exigencies of the case may warrant. . . . It is an incident of divorce. Divorce or separation without divorce and alimony spring from the same root, to-wit, the marriage relation. It has repeatedly been held that the right of a court to allow alimony in actions for divorce may proceed from its inherent power to make such provision in such cases, and, therefore, the court could make an allowance of alimony in the absence of express statutory authority for such action. (*Dunphy* v. *Dunphy,* 161 Cal. 90, 91 [118 Pac. 445].)" (See *Duss* v. *Duss,* 92 Fla. 1081 [111 South. 382, 383].) There is, however, in section 139 of the Civil Code authority for the exercise by the Superior Courts of a broad discretion in such matters. So much of said section as is directly pertinent to the present consideration reads: "Where a divorce is granted for an offense of the

husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support, during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively; and the court may, from time to time, modify its orders in these respects.''

(The divorce here was ''granted for an offense of the husband.'')

Speaking of this section of the code, it is said in *Soule* v. *Soule*, 4 Cal. App. 97, 100 [87 Pac. 205]: ''This statutory provision enters into every decree in an action for divorce which provides for the payment by the husband of an allowance for the support of the wife, as fully as though it should be incorporated into the terms of the decree. The authority of the court to modify its decree in this respect does not depend upon a reservation therefor in the decree itself, but exists by virtue of a statute, and being conferred upon the legislature, it is beyond its power to divest itself of such authority. (*Campbell* v. *Campbell,* 37 Wis. 706.)'' 

Again, in the same case, it is further said: ''The section of the code places no limitation upon the extent to which it may make such modification, the principle upon which the authority is to be exercised being that which determines its original order, viz., that the allowance to be made by the order as modified shall be such as the court may deem just, 'having regard to the circumstances of the case.' Under this section it may modify its former order either by increasing or reducing the amount of money to be paid at any one time, or enlarging or diminishing the frequency with which the payments are to be made. Neither is the authority to modify the decree limited by the section to a mere change in the *amount* of the allowance to be paid, but it includes a modification of the order in any respect which, under the circumstances of the particular case, may seem just to the court.''

To like effect is *Gates* v. *Gates,* 54 Cal. App. 407 [202 Pac. 151], the opinion being prepared by the late Justice Burnett, and approved by the Supreme Court by a denial of a hearing by that court. Therein the following language, cogently pertinent to the present case, is used: ''That the interlocutory judgment had become final before the modi-

fication was made does not render said section 139 inapplicable. The provision rests upon the theory that the trial court has a continuing jurisdiction in reference to such award. Its authority is not exhausted by the original order, nor is it foreclosed by the expiration of the time for an appeal. It is equally plain that the court is not required by express provision to reserve the authority to modify the award in order to justify such action. The language of said section becomes a part of the original order as though written therein. The section itself *reserves* to the court the authority to modify the allowance.''

See, in addition to the authorities above considered herein, cases cited in the footnotes of 1 California Jurisprudence, at pages 1032 and 1033.

It is true that ''there is no statutory authority giving the court jurisdiction to modify a divorce decree by the allowance of alimony where originally no provision was made therefor. . . . There can be no modification of an allowance for alimony where there is no allowance to modify it.'' (1 Cal. Jur., p. 1035, sec. 85, and cases therein cited.) But where, as here, there is such a provision in the interlocutory decree jurisdiction over the matter of alimony as well as that of the persons of the parties is continuing. (See opinion by Mr. Justice Richards in the very recent case of *Moore* v. *Superior Court of San Francisco,* 203 Cal. 238 [263 Pac. 1009].) Of course, the provision in the interlocutory decree adjusting ''the property rights'' of the parties does not involve also a definitive settlement of the matter of the wife's support.

■ The stipulation entered into between the petitioner and his wife, agreeing that the court might award the custody of their minor children as specified therein, and also that he would pay to his wife, in case the latter was granted a divorce, a specified monthly sum for the period of a year, and which stipulation was in effect adopted by the court in its interlocutory decree, cannot reasonably be construed as a settlement of the matter of alimony for all time, or as divesting the court of jurisdiction of changing the order or decree after the expiration of the year during which the life of the stipulation was to exist, whenever circumstances were in an appropriate manner brought to its attention. The stipulation did not provide for a ''lump'' sum, but merely

that the particular amount specified was to be paid each and every month for the period of one year, still leaving it to the court, in the exercise of its continuing jurisdiction of and over the matter of alimony, and of the parties, to increase or decrease the amount so awarded, or entirely expunge from the decree the provision awarding alimony according as its discretion, regulated by the circumstances presented, might justify or require. ▮ The respondent Court in making the modified order thus construed the stipulation, and even if it were necessary to concede that the language of the document was ambiguous in the particular in which it has been here considered (and we think it is not), such construction would be and is conclusive upon this court.

. ▮ As to the written agreement above quoted herein, there is no showing in the return to the writ herein sought that it was introduced in evidence at the trial of the divorce action. Counsel for respondents, in his brief, states that it was not so introduced, and this statement is not denied. But, assuming that it was so introduced, the Court was not bound by it in the matter of awarding alimony. Agreements between the spouses relative to alimony or fixing by and between themselves the amount which the Court may allow are subject to the power of the Court, under section 139 of the Civil Code, to modify or wholly reject, as provided in said section. (*Mathews* v. *Mathews*, 55 Cal. App. 661, 662 [204 Pac. 27]; *Hughes* v. *Hughes*, 68 Cal. App. 195 [228 Pac. 675]; *Greene* v. *Greene*, 86 Cal. App. 275. [260 Pac. 845]; see note, *Jennison* v. *Jennison*, 33 Ind. App. 275 [Ann. Cas. 1912C, 441, 71 N. E. 244].) ▮ The interlocutory decree, as is obvious, did not follow the agreement referred to, and, therefore, the presumption is, even if the agreement was introduced in evidence at the trial of the suit for divorce, that the trial court refused to approve or follow it in fixing and awarding alimony.

▮ 4. The respondent Court had before it ample evidence, both direct and circumstantial, to support its implied finding that the petitioner was possessed of sufficient means to satisfy the award of alimony as made in the final decree. The affidavit of Elaine T. Smith upon which the citation for contempt was issued alleges, among other things, that petitioner, on numerous occasions, after the modified order

was made and incorporated in the final decree, stated to affiant that "he would not pay the sums of money so ordered by the court to be paid by him to plaintiff (Elaine T. Smith) or any part thereof to affiant." The petitioner, in his counter-affidavit, denied that he ever made such statements to said Elaine, or any other person, on any occasion, "or at all."

It is not necessary to present herein any extended statement of the evidence bearing upon the ability of the petitioner to pay the alimony fixed in and by the final decree. It was shown that petitioner was a beneficiary under a testamentary trust created by his deceased mother; that the California National Bank Association, in San Francisco, and Felix T. Smith, brother of petitioner, are the trustees of the trust and the property thereof; that the annual income from said property, prior to and at the time of the hearing of this proceeding by the respondent Court, amounted to the sum of $29,000, of which the petitioner was entitled to be paid as his share seven twenty-fourths, or a little in excess of $8,000 annually, in monthly installments or payments. It also appears that the trustee bank was the trustee under a testamentary trust created by the deceased father of petitioner. The trust officer of the trustee bank testified that petitioner was indebted to the estate of his father in the sum of $50,000, evidenced by promissory notes; that the trustees of the estate of the mother of petitioner paid to the latter the share of the income to which he was entitled from said estate regularly up to and including the month of November, 1926, at which time they paid petitioner the sum of $7,250; that the witness and the brother of petitioner, the cotrustee of the bank of the mother's estate, after consultation subsequent to the entry of the final decree of divorce, decided that they would not make the petitioner further payments on his share of the income from his mother's estate, but would apply such income to the payment of petitioner's indebtedness to his father's estate, and continue so to do until the indebtedness was extinguished. The trustees, it appears, paid the alimony for the support of Elaine T. Smith and their children provided for in the interlocutory decree out of petitioner's share of the income.

It was further shown that petitioner had a life estate in and possession of a 600-acre ranch in Yuba County; that wine

grapes were grown by him on 80 or 100 acres thereof; that, although the trustees of the father's estate held a mortgage on the crops produced thereon and the implements of husbandry as security for his indebtedness to said estate, they not only paid the taxes on the ranch but permitted petitioner to receive and use for his personal purposes the proceeds from the sale of the grapes and other products of the ranch, while also at the same time paying him his share in monthly installments of the income from his mother's estate.

Further specific reference to the evidence will not be made. It is sufficient to say, as to the witnesses for the petitioner whose testimony has above been briefly considered, that neither on their direct nor cross-examination did they give a reasonable or any satisfactory explanation of the reason for so suddenly, after the final decree was entered, deciding to appropriate the petitioner's income entirely to the payment of the debt he owed his father's estate; that they wholly failed satisfactorily to explain why they permitted the petitioner to use for his own individual purposes the income from the crops produced on his 600-acre ranch when, at the same time, such crops, together with the implements of husbandry used on said ranch, were under mortgage to his father's estate to secure payment of the indebtedness to said estate. These, and other considerations arising from the evidence, which need not be mentioned here, would seem clearly to have justified the remark of the judge, when reviewing the evidence in this proceeding, in deciding the issue herein, that the circumstances so developed plainly warranted the conclusion that the whole scheme was in furtherance of petitioner's asseverations which Mrs. Smith testified that he had in effect made to her that he did not intend to pay the alimony provided for in the final decree. Moreover, the award of alimony constituted one of the most sacred of contractual obligations—sacred because it is the creation of a solemn decree of a court of justice, sacred because it is an obligation to furnish support for the indigent and physically incapacitated (as the evidence shows) mother of the petitioner's children—the woman to whom, under the most sacred circumstances, he pledged his unswerving fealty and love for all human time —a pledge the destruction of the force of which was the

product of his own offense. If the large income was to be used for the payment of his debts, why not have included in the schedule this all-important and pressing debt, of which the trustees were in possession of full knowledge. All these matters the respondent Court undoubtedly considered in adjudging petitioner guilty of contempt. It must be conceded that they were of overwhelming evidentiary force in the determination of the issue.

The order to show cause is discharged, and the judgment of contempt, in so far as it involves the contumacious conduct of the petitioner in failing and refusing to obey that part of the final decree of divorce awarding alimony to Elaine T. Smith, plaintiff in the divorce action, is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 10, 1928, and the following opinion then rendered thereon:

THE COURT.—On petition for rehearing.

All the points made in the petition for a rehearing are substantially the same as those made on the first hearing hereof. We are satisfied with the conclusions announced in the original opinion as to said points. There is disclosed by this record sufficient evidence to support the implied finding of the respondent Court that the petitioner is possessed of ample means to pay the alimony allowed.

The petition for rehearing is denied.

An application by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 9, 1928.

All the Justices concurred.