BLANCHE BAMBOSCHEK, Plaintiff, *v.* GUISEPPE BAMBOSCHEK, Defendant.

Supreme Court, New York County, March 29, 1934.

*Samuel Schaub*, for the plaintiff.

*Brower & Titlebaum* [*Nathaniel H. Brower* of counsel], for the defendant.

COTILLO, J. This proceeding has arisen from an attempt upon the part of the plaintiff to secure an order holding the defendant in contempt for impeding, impairing, prejudicing and defeating the rights and remedies of the plaintiff by his contumacious conduct in

willfully failing and refusing to pay alimony, as provided in a judgment of divorce granted by this court on the 13th day of January, 1930. The plaintiff claims that, at the time the order to show cause was granted, the sum of $12,918 of unpaid alimony had accrued. On the return day of the motion the defendant appeared and by cross-motion applied for counter relief under section 1172-a of the Civil Practice Act.

The summons and complaint in the divorce action, verified the 26th day of September, 1929, reveal that the parties were married on the 27th day of March, 1928, and that there are no children of the marriage. The action was undefended and the official referee, basing the award of alimony upon nothing but a bare estimate by the plaintiff of the defendant's earnings, fixed the alimony at $100 a week. The short time intervening between the marriage and the conclusion of the undefended divorce action lends great weight to the claim of the defendant that the plaintiff, who was represented by her uncle, had agreed, if no defense were offered, to ask for no alimony.

The defendant is a musician and at one time was a conductor employed by the Metropolitan Opera House. He began as a musician at the age of seventeen years, at which time he earned $10 a week as an assistant conductor. He was with the Metropolitan Opera House for seventeen years, his employment ceasing in 1929. He was employed as conductor and general musical secretary. His salary at that time was $7,000 per annum. For nine months, after severing his connection with the Metropolitan, he had no employment. In 1930 he began to act as accompanist to the artist Martinelli. Up to the present time his engagement has been at intervals and his income very limited. Because of inability to pay the alimony awarded by the decree, he was imprisoned in 1930. He was released upon his payment of $250 to the attorney for his wife. In 1931, having obtained a contract to act as accompanist to Lily Pons, he assigned fifty per cent of his wages to his wife. In 1932 he again was employed by Miss Pons and made the same arrangement. The defendant has no bank accounts, either saving or checking; he has no jewelry, and is heavily in debt, and has several large judgments entered against him, and at the present time is being examined in proceedings supplementary to execution on one of the judgments. He has no life insurance and is now practically being supported by his second wife. He owes a number of small bills to such as the laundryman and cleaner. The defendant is evidently a neurotic, a fact which is militating against his earning a large amount of money. He is living at the present time with his second wife in a furnished room for which the wife is paying the rent,

which amounts to twelve dollars weekly. The plaintiff is a young woman, enjoying good health, of a fair education and well able to work, and in fact is engaged with her mother in conducting an insurance agency inherited from her father. The plaintiff and her mother are living in a Central Park West apartment.

Defendant's prayer for cross relief under section 1172-a necessarily challenges plaintiff's claim that the failure to pay was willful and, therefore, contumacious. Defendant by his papers has shown himself fully entitled, by reason of his financial inability to comply with the terms of the decree, and is, therefore, entitled to the relief under section 1172-a. The extent of the relief must be measured by the provisions of that section which reads as follows:

" § 1172-a. Provisions respecting persons financially unable to comply with orders or judgments directing the payment of alimony.

" 1. Any person who, by an order or judgment made or entered in an action for divorce or separation or an action for the enforcement in this state of a judgment for divorce or separation rendered in another state, is directed to make payment of any sum or sums of money and against whom an order to punish for a contempt of court has been made pursuant to the provisions of section eleven hundred and seventy-two of this act or the judiciary law may, if financially unable to comply with the order or judgment to make such payment, upon such notice to such parties as the court may direct, make application to the court for an order relieving him from such payment and such contempt order. The court, upon the hearing of such application, if satisfied from the proofs and evidence offered and submitted that the applicant is financially unable to make such payment may, in its discretion, until further order of the court, modify the order or judgment to make such payment and relieve him from such contempt order.

" 2. Whenever, upon application to the court by any interested party, it appears to the satisfaction of the court that any person, who has been relieved totally or partially from making any such payment pursuant to the provisions of this section, is no longer financially unable to comply with the order or judgment to make such payment, then the court may, in its discretion, modify or revoke its order relieving him totally or partially from making such payment.

" 3. Any person may assert his financial inability to comply with the directions contained in an order or judgment made or entered in an action for divorce or separation or an action for the enforcement in this state of a judgment for divorce or separation rendered in another state, as a defense in a proceeding instituted against him under section eleven hundred and seventy-two of this act or under

the judiciary law to punish him for his failure to comply with such directions and, if the court, upon the hearing of such contempt proceeding, is satisfied from the proofs and evidence offered and submitted that the defendant is financially unable to comply with such order or judgment, it may, in its discretion, until further order of the court, make an order modifying such order or judgment and denying the application to punish the defendant for contempt." (Added by Laws of 1933, chap. 685, in effect September 1, 1933.)

To understand the provisions of that section in their proper perspective it is necessary to view the remedies of a wife against a husband who has failed in paying alimony awarded by the court. Sections 1171 and 1172 give the wife extraordinary remedies of sequestration and contempt, on the husband's failure to pay the sums decreed. Section 1170 provides for a modification of the provisions of the final judgment or order. Under the latter section, for example, defendant in the absence of section 1172-a might have made an application to the court for leave to apply for a modification of the alimony decree. Assuming he could have obtained such leave in face of the fact that he was indebted for past alimony and technically in contempt, the effect of a favorable entertainment of his application and a decision in his favor upon the facts, would have been to relieve him of the further payment of alimony by reason of his straitened financial circumstances. An order of this character would have been in the nature of a modification of the decree, and until the wife, by reason of proof of the husband's change of circumstances, obtained a new order restoring the alimony in whole or in part, the husband would be relieved for the entire period of any payments and a restoration of the alimony provision would not be retroactive but would date only from the time of the remodification in favor of the wife. In the light of this discussion let us see what the Legislature has endeavored to do and to what extent it grants relief to unfortunate husbands who without fault of their own find themselves financially unable to meet their alimony obligations.

In the first subdivision a person against whom an outstanding contempt order exists, may purge himself of contempt, and secure a modification of the order or judgment for the payment of alimony, on showing his financial inability. The third subdivision is substantially similar, except that it provides for a situation in which an application for a contempt order is made by the wife, and the husband is permitted to assert a defense of financial inability and secure the relief provided in the first subdivision. Defendant's application seems to come within the third subdivision rather than the first, although the distinction from the standpoint of the relief available is academic. The second subdivision provides for a

modification of the relief order, where it appears that the defendant no longer suffers from financial inability.

Two broad questions of interpretation are involved: *First*, what is the nature of the relief which can be afforded to the impecunious debtor; and *second*, what is the effect upon the husband's obligations when the relief order is revoked or modified. As to the first question, it is plain that where the court is convinced of the debtor's financial inability it can refuse to order his imprisonment. How much further may the order go? The two subdivisions provide for a modification of the order or judgment. This modification refers at least to a change in the obligations of the defendant in the future commensurate with his straitened financial circumstances. Does it extend beyond such relief to the extent of canceling or reducing the accrued debt under the order or judgment?

In *Livingston* v. *Livingston* (173 N. Y. 377) the court had before it the following situation: The Legislature had passed a statute granting a right after final judgment to make an application to annul, vary or modify the provision for alimony. The substance of that statute is now embodied in sections 1155 and 1170 of the Civil Practice Act. But as enacted by the Legislature it contained a provision which made it applicable not only to future judgments but to those theretofore obtained. The statute in so far as it was retroactive was declared unconstitutional on the ground that a final judgment granting a divorce and directing defendant to pay a certain sum per year for the plaintiff's support and the education and maintenance of her children creates and vests substantial rights which constitute property of the plaintiff, of which she cannot be deprived without due process of law. That decision, therefore, prohibits the cancellation of accrued alimony even if the statute permitted it.

I do not believe, however, that there is any implication in section 1172-a that any modification of the alimony order should apply to the accruals at the time of the application for relief. As to past due alimony, it must be observed, the statute merely suspends the auxiliary remedies for the enforcement of the judgment given to the wife by section 1172. Such suspension in no way is an interference with any vested rights. It is well known that the full faith and credit clause of the Constitution of the United States does not apply to the remedial features specifically given by statute for the enforcement of a judgment of alimony. (*Lynde* v. *Lynde*, 162 N. Y. 405; affd., 181 U. S. 183.) That clause of the Constitution merely compels the recognition of the money feature of such a judgment and permits its collection by ordinary process. What section 1172-a has accomplished, therefore, is to suspend the extraordinary remedy

of contempt in certain instances, without interfering with the wife's right to enforce the judgment by ordinary remedies. The provision for modification as to the future is not new, being already contained in section 1170. The only reason for an expression of that principle in the new section mentioned is to give the court undisputed jurisdiction to entertain an application for modification, even though the defendant may not have complied with past directions and even though he may be technically in contempt.

It may be well, for the sake of clarity, to make some expression as to the effect of subdivision 2 of section 1172-a. What does the future revocation of the relief order accomplish? Naturally where a defendant is no longer financially unable to pay alimony he should upon application by the wife, be compelled to continue payments in the future. But a revocation of the relief order means more than the fixing of future alimony by reason of changed circumstances. If it meant that alone, it would be unnecessary legislation, because section 1170 already provides that relief. It also means that if the defendant becomes financially able, he should be compelled to pay the arrears or such part of it as he is able. It does not, however, restore the obligation to pay alimony which would have been due except for the modification of the order. This is so in accordance with the analogy of section 1170. It seems to me that if under that section alimony were reduced upon application of a husband, and thereafter increased upon application of the wife, the increase would not be retroactive and would not restore the reductions of which the husband had the benefit, no matter how financially able he might have become.

Applying the principles enunciated to the situation at bar, I find that defendant has fully proved his financial inability. The motion to punish for contempt is denied and the cross-motion is granted by eliminating from the decree the provision for payment of alimony and relieving the defendant from the liability provided in section 1172 for failure to pay arrears in alimony up to date. Settle order.