[No. 25308. *En Banc.* March 19, 1935.]

MARION BOVARD SHIBLEY, *Appellant,* v. KENNETH
SHIBLEY, *Respondent.*[1]

*Bausman, Oldham, Cohen & Jarvis, Livingston &
Livingston,* and *Simon Wampold, Jr.,* for appellant.
*Kahin & Carmody,* for respondent.

MITCHELL, J.—In a separate maintenance action
brought by Marion Bovard Shibley against Kenneth
Shibley in the superior court in and for the county of
San Francisco, California, both parties appearing
therein, a decree was entered in August, 1929, which,
among other things, ordered the defendant to pay the
plaintiff five hundred dollars per month for the main-
tenance of the plaintiff and the minor children of the
plaintiff and the defendant. Thereafter, in 1931, upon
stipulation of the parties, a modified decree was en-
tered by which the monthly payments were reduced to

[1]Reported in 42 P. (2d) 446.

four hundred dollars, "beginning as of January 1, 1930." It was further provided in the modified decree that certain stock standing in the name of the defendant issued by a California corporation should be deposited in a given bank in escrow upon specified conditions as security for the monthly payments due the plaintiff, but providing in that respect that the remedy by and against such security "shall be cumulative and not exclusive."

The present action was commenced by the plaintiff against her husband in the superior court for King county, wherein by an amended complaint, after setting up the action and modified decree in the California court, she alleged that monthly payments were made to her until and including March 1, 1932, since which date no payment has been made. She demands judgment for the amount already due and owing under the modified decree; and also prays that the judgment of the California court be established here as a foreign judgment, to be enforced in equity by contempt proceedings, if necessary, as is usual in such cases; and she prays for such further relief as may be proper. The defendant appeared by answer, denying essential allegations of the amended complaint. Upon the trial, judgment was entered dismissing the action with prejudice. The plaintiff has appealed.

In an oral decision at the close of the hearing, it was held that, because the modified judgment, entered in 1931, changed the amount of monthly payments from five hundred dollars to four hundred dollars and related back in that respect for one year or to January 1, 1930, therefore the modified judgment was not final as to past due installments, but that the same might be changed from time to time by the court; and that, since it was not final in the California courts, it

was not final here, in the sense that it could be enforced in the courts of this state.

We do not so understand the modified judgment. Clearly, the reduction made by the modified judgment in the amounts already due and unpaid was made, not because of any power in the court to do so except upon *stipulation* of the parties. The trial court further held that suit could not be maintained in the courts of this state until the stock deposited as security was first exhausted. There was no agreement between the parties to that effect, and, to the contrary, the judgment provided that the right or remedy to exhaust the stock placed in escrow shall be "cumulative and not exclusive."

The modified decree as a fact was fully proven. Its terms and provisions were not disputed. Respondent does not deny, by his pleading or otherwise, the allegation in the present action that he has made no payment since March 1, 1932.

To prove the law of California upon the subject of the power of the courts of that state to modify or reduce amounts already accrued and past due under judgments of this kind, it was stipulated, as stated by counsel for respondent at the trial, "We have stipulated that the cases to which we call your Honor's attention may be considered by your Honor as determining what the California law is." Accordingly, appellant listed the following California cases: *Cummings v. Cummings,* 97 Cal. App. 144, 275 Pac. 245; *Rinkenberger v. Rinkenberger,* 99 Cal. App. 45, 277 Pac. 1096; and *Bruton v. Tearle,* 117 Cal. App. 696, 4 P. (2d) 623.

The following California cases were furnished by the respondent: *Wolff v. Wolff,* 102 Cal. 433, 36 Pac. 767, 1037; *Lynch v. Lynch,* 69 Cal. App. 66, 230 Pac. 462; *Smith v. Superior Court,* 89 Cal. App. 177, 264 Pac. 573; *Booth v. Booth,* 100 Cal. App. 28, 279 Pac.

458; *Johnson v. Johnson,* 104 Cal. App. 283, 285 Pac. 902; *Willen v. Willen,* 119 Cal. App. 483, 6 P. (2d) 554; *Wilder v. Wilder,* 214 Cal. 783, 7 P. (2d) 1032; *Bechtel v. Bechtel,* 124 Cal. App. 617, 12 P. (2d) 970.

The cases relied on by the appellant clearly announce the rule applicable in California, as set out in *Cummings v. Cummings, supra,* as follows:

"A judgment for alimony is not subject to modification as to sums already accrued and past due. This is the law of California and New York. (*Soule v. Soule,* 4 Cal. App. 97 [87 Pac. 205]; *Sistare v. Sistare,* 218 U. S. 1 [20 Ann. Cas. 1061, 28 L. R. A. (N S.) 1068, 54 L. Ed. 905, 30 Sup. Ct. Rep. 682, see, also, Rose's U. S. Notes].)"

The cases cited by the respondent are not to the contrary. As we understand them, not one of them holds that a periodic allowance fixed by the court may be modified by the court after the amount has accrued and is owing. Indeed, counsel for respondent in his brief says *Smith v. Superior Court, supra,* is the most direct authority of all cases cited upon the question involved. Yet, as we read that case, the nearest approach it makes to the present question was to hold that a provision in an interlocutory decree of divorce upon the subject of allowance for alimony *only* during that period, does not bar the court from providing in the final decree a different amount as to permanent alimony commencing after the expiration of the time covered by the allowance in the interlocutory decree.

The California cases upon the subject in question show that the law in that state is the same as it is in this state, as set out in *Phillips v. Phillips,* 165 Wash. 616, 6 P. (2d) 61, as follows:

"As to installments of alimony,

" ' . . . the rights and liabilities of the parties become absolute and fixed at the time provided in the decree for their payment, and to this extent the judg-

ment is a final one.' *Harris v. Harris,* 71 Wash. 307, 128 Pac. 673; *Beers v. Beers,* 74 Wash. 458, 133 Pac. 605.

"The party to whom such payments are to be made has, to the extent of alimony due and unpaid, such an interest therein that the court has no power to take it away. *Beers v. Beers,* 74 Wash. 458, 133 Pac. 605; *Selvin v. Selvin,* 135 Wash. 186, 237 Pac. 304; *Kinne v. Kinne,* 137 Wash. 284, 242 Pac. 388; *Rehberger v. Rehberger,* 153 Wash. 591, 280 Pac. 8; *Boudwin v. Boudwin,* 159 Wash. 262, 292 Pac. 1017.''

 Plaintiff is entitled to recover in this case for the amount already accrued and due according to the allegations of her complaint, the judgment to provide for its enforcement as a judgment or decree in equity. We adopt this procedure, not on account of the rule of comity enjoined by the full faith and credit clause of the Federal constitution, but because, as a matter of public concern and equitable power, the enforcement in this state of such decrees for alimony and support money should not depend solely upon ordinary execution, but that the common practice in this state with respect to all the remedies for the enforcement of such decrees as if originally entered here should be followed and enforced.

In this regard, we adopt the rule and reason announced by the Mississippi, California and Minnesota courts, among others: In *Fanchier v. Gammill,* 148 Miss. 723, 114 So. 813, a suit was brought in equity to enforce a decree for alimony rendered in Nevada. A demurrer was sustained to the bill on the ground of lack of jurisdiction, because the decree of the Nevada court amounted to no more than a judgment at law. In reversing the judgment, the supreme court, upon reviewing the authorities on the subject, said:

"We have tried to carefully review these decisions and determine which we think would be the better rule

to announce as the law in our state, and we have come to the conclusion that a decree for alimony granted by a foreign court may be established and enforced by and through the equity courts of our state, and that our equity courts may assume jurisdiction of the alimony decree and establish and enforce it, and that therefore the decree of the chancery court sustaining the demurrer to the bill herein was error which must result in reversal.

"It is our view that, on account of the character of a judgment for alimony, which rests, to some extent, upon public policy, in requiring a husband to support his wife and children, due to the sacred human relationship, and that they may not become public charges and derelicts, the decree for alimony, with the extraordinary power of enforcement by attachment and contempt proceedings, should be established and enforced by our equity court, which has full and sole jurisdiction of all matters of divorce and alimony; because to hold that a foreign judgment for alimony can be enforced in this state only by execution, the same as judgments at law, would be to impair or to deprive a foreign judgment for alimony of its inherent power of enforcement by attachment and contempt proceedings. . . .

"There can be no sound reason for such a view. We should not hold that all foreign judgments are alike when it comes to enforcing them in our state, and that execution on a judgment at law is the only method that can be prosecuted, even though such foreign judgment be one for alimony; that such judgment cannot be enforced by proceedings to attach or cite defendant before the court to show cause why he should not be punished for contempt in failing to carry out his obligation to pay alimony to his wife, as solemnly decreed by a court of competent jurisdiction. Such a view is not the better one; and, while there may be respectable authority to support it, we decline to follow it and shall adopt that rule which allows the enforcement of a foreign decree for alimony in the same manner that it could have been enforced, if originally obtained here, to-wit, by attachment and contempt proceedings in the chancery court of our state."

To the same effect is the case of *Cummings v. Cummings,* 97 Cal. App. 144, 275 Pac. 245, already mentioned here, which was a suit upon a New York judgment granting separate maintenance for the support of defendant's wife and children. Equitable relief was granted, and in affirmance on appeal, the supreme court said:

"While the question seems to be a new one in this state, yet there is respectable authority in other states to support the doctrine that a judgment for alimony of a sister state may be enforced in the same manner that it could have been enforced if originally obtained here. . . . The facts alleged and proved entitled the plaintiff to equitable relief and the relief granted seems appropriate."

In *Creager v. Superior Court of Santa Clara County,* 126 Cal. App. 280, 14 P. (2d) 552, plaintiff recovered in California upon a Nevada judgment awarding alimony. Contempt proceedings were commenced against the husband for failure to pay. The defendant sought a writ of prohibition to restrain the trial court from proceeding under the order directing the defendant to show cause. The district court of appeals denied the relief, saying:

"The question then arises as to the manner of its enforcement. Petitioner contends that it cannot be enforced by contempt proceedings like an original award of alimony by the respondent court, but only by execution in the same manner as an ordinary money judgment. In our opinion this contention cannot be sustained. Petitioner's contention would have some force if the plaintiff had merely used the Nevada decree as the basis for obtaining an ordinary money judgment for accrued installments of alimony in an action at law against petitioner. . . . But here the plaintiff did not seek a mere money judgment, but sought and obtained a judgment whereby the Nevada decree was 'established herein as a foreign judgment.' For the purpose of enforcement in this state, we believe that

the respondent court properly treated its own judgment, based upon and establishing the Nevada judgment, in the same manner as an original award of alimony by the respondent court.''

To the same effect was the decision in *Ostrander v. Ostrander,* 190 Minn. 547, 252 N. W. 449, in a suit in that state to enforce a decree for alimony and the support of a minor child, original in another state. The supreme court of Minnesota stated, among other things:

''Migration of the parties across a state line has wrought no change in the nature and basis of the obligation. Its purpose remains the payment of alimony needed for the support of a former wife and the child of herself and her debtor. To the ordinary mind, untroubled by legal nuances, the money due from defendant remains alimony wherever they or either may be. We prefer that nontechnical view which regards the substance of the matter as unchanged by mere removal of the debtor across a state line. . . . But we decline debate as to how little we can do for plaintiff and yet comply with the full faith and credit mandate. In view of her plain right, and the need for its enforcement, not only in justice to her and her child but also to vindicate our system of interstate comity, we prefer only to inquire whether our district court has adequate power to give plaintiff the remedy which the nature of her claim commends as just.''

The judgment in this case is reversed, and remanded with directions to the superior court to enter a judgment for the appellant according to the views herein expressed.

MAIN, STEINERT, BEALS, BLAKE, and HOLCOMB, JJ., concur.

MILLARD, C. J. (dissenting)—A decree in equity for an ascertained and specific amount of money is of no higher dignity than a judgment at law for a sum of money. A decree for alimony is a debt of record as

much as any other judgment for money. 1 R. C. L. 951.

As we said in *In re Van Alstine,* 21 Wash. 194, 57 Pac. 348:

"Here is a decree for money,—a decree analogous to a money judgment at law, which may be enforced by process against property. It differs from a decree for the recovery of something in specie, of which a party has been deprived, and for the loss of which compensation in damages cannot be made, or requiring the performance of some specific act, other than the payment of money, which it is the duty of a party to perform."

In *Pennington v. Gibson,* 57 U. S. 64, 14 Law Ed. 847, the court said:

"We lay it down, therefore, as the general rule, that in every instance in which an action of debt can be maintained upon a judgment at law for a sum of money awarded by such judgment, the like action can be maintained upon a decree in equity which is for an ascertained and specific amount, and nothing more; and that the record of the proceedings in the one case must be ranked with and responded to as of the same dignity and binding obligation with the record in the other."

In some states, the remedial features for the enforcement of a judgment of alimony are provided by statute. However, even in the absence of a statute authorizing such procedure, under the inherent power of the court to enforce its decrees and orders according to its equity powers, a decree for alimony may be enforced by attachment for contempt. *Phillips v. Phillips,* 165 Wash. 616, 6 P. (2d) 61.

The foregoing rule has no application to an action on a foreign decree for alimony which is for the enforcement of a debt of record. The full faith and credit clause of the constitution of the United States (Art. IV, § 1) does not apply to the remedial features specifically given by the statute, or those which are inherent in courts of equity for the enforcement of a judgment of

alimony. That clause of the constitution merely compels the recognition of the money feature of such judgment, and permits its collection by ordinary process. *Bamboschek v. Bamboschek,* 150 Misc. 885, 270 N. Y. Supp. 741; *Lynde v. Lynde,* 162 N. Y. 405, 56 N. E. 979, 48 L. R. A. 679, 76 Am. St. 332.

I can not agree with the rule adopted by the supreme courts of California, Minnesota and Mississippi. The rule announced in *In re Cave,* 26 Wash. 213, 66 Pac. 425, 90 Am. St. 736, and cited in *Phillips v. Phillips,* 165 Wash. 616, 6 P. (2d) 61, respecting the power of a court of equity to enforce a decree for alimony by attachment for contempt, applies to the enforcement of a judgment for alimony by contempt proceedings only in a suit for a divorce or separation brought in a court of this state. Until such time as our legislature declares it to be the public policy of this state that a foreign decree for alimony can be enforced by attachment for contempt, I can not subscribe to the majority opinion. I agree that, in an action in a court of this state on such foreign judgment, a money judgment for the unpaid amount of alimony may be recovered, but as stated in the dissenting opinion in *Ostrander v. Ostrander,* 190 Minn. 547, 252 N. W. 449:

"Such a suit in a court of this state is not a suit for divorce or separation, and the judgment here is for the recovery of an indebtedness established by the foreign judgment."

That view is entertained by authority no less distinguished than that cited in support of the majority opinion. *Mayer v. Mayer,* 154 Mich. 386, 117 N. W. 890, 19 L. R. A. (N. S.) 245, 129 Am. St. 477; *Weidman v. Weidman,* 274 Mass. 118, 174 N. E. 206, 76 A. L. R. 1359.

"Owing to the fact that an action on a foreign decree for alimony is in theory for the enforcement of a

debt of record, and not for compelling the payment of alimony as such, remedies of the local forum for the enforcement of the payment of alimony are not ordinarily available to enforce a foreign decree. Furthermore, provisions in a foreign decree as to the mode of its enforcement are in their nature matters of procedure, and are operative only within the jurisdiction wherein it was rendered.'' 1 R. C. L. 958.

In *Lynde v. Lynde,* 162 N. Y. 405, 56 N. E. 979, 76 Am. St. 332, 48 L. R. A. 679, which was affirmed in 181 U. S. 183, 21 S. Ct. 555, cited as a foot note in support of the foregoing, the supreme court of the United States said:

''By the Constitution and the act of Congress, requiring the faith and credit to be given to a judgment of the court of another State that it has in the State where it was rendered, it was long ago declared by this court: 'The judgment is made a debt of record, not examinable upon its merits; but it does not carry with it, into another State, the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another State, it must be made a judgment there; and can only be executed in the latter as its laws may permit.' *McElmoyle v. Cohen,* 13 Pet. 312, 325; *Thompson v. Whitman,* 18 Wall. 457, 463; *Wisconsin v. Pelican Ins. Co.,* 127 U. S. 265, 292; *Bullock v. Bullock,* 6 Dickinson (51 N. J. Eq.) 444, and 7 Dickinson (52 N. J. Eq.) 561.''

Appellant is entitled to no more than a money judgment upon the California judgment, which would be an ordinary judgment at law and not a decree of an equity court; and there could not be applied to it the equitable remedy of enforcement by contempt proceedings.

TOLMAN and GERAGHTY, JJ., concur with MILLARD, C. J.