IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In re the Parenting and Support of | ) | No. 77961-3-I |
| Q.J.M. and T.J.M. | ) | |
| | ) | ORDER DENYING APPELLANT'S |
| Minor Children, | ) | MOTION FOR RECONSIDERATION, |
| | ) | DENYING RESPONDENT'S REQUEST |
| SEAN C. MORRIS, | ) | FOR ATTORNEY FEES, WITHDRAWING |
| | ) | OPINION, AND SUBSTITUTING |
| Appellant, | ) | OPINION |
| | ) | |
| and | ) | |
| | ) | |
| TONYA A. MORRIS, | ) | |
| | ) | |
| Respondent. | ) | |

Appellant, Sean Morris, has filed a motion for reconsideration of the opinion filed on March 25, 2019. Respondent, Tonya Morris, has filed an answer to appellant's motion for reconsideration and has requested attorney fees. The court has determined that appellant's motion for reconsideration should be denied, respondent's request for attorney fees should be denied, the opinion should be withdrawn, and a substitute opinion be filed. Now, therefore, it is hereby

ORDERED that appellant's motion for reconsideration is denied and respondent's request for attorney fees is denied. It is further

No. 77961-3-I/2

ORDERED that the opinion filed on March 25, 2019, is withdrawn and a substitute opinion be filed.

_Dwyer, J._

_Andrus, J._                    _Schindler, J._

2

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Parenting and Support of | ) | |
| | ) | No. 77961-3-I |
| Q.J.M. and T.J.M. | ) | |
| | ) | DIVISION ONE |
| Minor Children, | ) | |
| | ) | |
| SEAN C. MORRIS, | ) | |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | FILED: May 28, 2019 |
| | ) | |
| TONYA A. MORRIS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

SMITH, J. — Sean Morris appeals an order directing him to pay <u>Ostler Smith</u> spousal support[1] under a 2010 California decree based on a payment he received in 2015 for accrued vacation that his former employer should have paid to him in 2012. Because the 2010 decree expressly states that <u>Ostler Smith</u> support applies to deferred compensation and vacation time is a form of deferred compensation under California law, we affirm.

---

[1] In California, "<u>Ostler Smith</u>" support refers to support payments calculated based on a percentage of future income. <u>See</u> <u>In re Marriage of Ostler</u>, 223 Cal. App. 3d 33, 272 Cal. Rptr. 560 (1990).

## FACTS

Sean and Tonya Morris were divorced in California in July 2010.[2] At the time, Sean worked for Sun Life Financial (Sun Life). The parties had two sons who later relocated with Tonya to Washington.

In its 2010 dissolution decree, the California court ordered Sean to pay monthly spousal support of $2,700, plus Ostler Smith spousal support equal to 25 percent of any gross monthly income in excess of $16,666.67. Specifically, the 2010 decree provides:

> 20. Commencing June 1, 2010, [Sean] shall pay to [Tonya] base spousal support of $2,700 per month, payable one-half on the first and one-half on the fifteenth days of each month, and continuing thereafter until the death of either party, remarriage of [Tonya], further order of Court or until the May 15, 2013, payment has been made by [Sean] to [Tonya], whichever first occurs. Spousal support and the Court's jurisdiction to order spousal support shall absolutely terminate with the payment on May 15, 2013, and may not be extended for any reason whatsoever. Spousal support shall terminate following the May 15, 2013, payment even if application is made by [Tonya] to extend said date prior to the May 15, 2013, payment.
>
> 21. Except as provided for differently in this paragraph, as and for additional spousal support, there shall be a[n] Ostler [Smith] formula of twenty-five [percent] (25%) as additional spousal support on any of [Sean]'s gross income from employment, including, but not limited to, the combined amount of salary, bonus, deferred compensation and RSU's, in excess of $16,666.67 gross per month. Within forty-eight (48) hours of receiving any gross monthly income in excess of $16,666.67 the following events shall occur: [Sean] shall provide [Tonya] with written confirmation of the amount of any such monthly income in excess of $16,666.67; [Sean] shall pay the required sum to [Tonya].

---

[2] Because Sean and Tonya share a common last name, we refer to them by their first names.

The California court also ordered Sean to pay monthly child support of $2,780.00, plus Ostler Smith child support equal to 11 percent of any gross monthly income in excess of $16,666.67. Like the 2010 decree's spousal support provision, the child support provision requires Sean to give Tonya notice within 48 hours of receiving any gross monthly income in excess of $16,666.67.

Sean was laid off by Sun Life in December 2011. He received a severance package in which Sun Life agreed to pay him for his "Sun Days," i.e., vacation days that he had accrued as of his last employment day of record. Sun Life agreed to pay Sean for his Sun Days no later than the pay period following March 9, 2012, and in March 2012, Sean received a $24,554.24 Sun Days payment.

After being laid off by Sun Life, Sean moved the California court to modify his support obligations under the 2010 decree. As part of that modification action, the parties litigated whether Sun Days were income for purposes of Ostler Smith support. For reasons that are unclear from the record, the California court did not enter a final order on Sean's motion to modify until April 29, 2014. In April 2014, the California court ordered that effective January 15, 2013, (1) Sean's fixed monthly spousal support obligation would increase from $2,700.00 to $3,000.00, (2) no Ostler Smith spousal support would attach to this revised spousal support amount, (3) Sean's fixed monthly child support obligation would be reduced from $2,780.00 to $2,584.00, and (4) Sean's Ostler Smith child support obligation would be revised to 11.66 percent of any gross monthly income in excess of $12,500.00. The court ordered that although a "Cole bonus"

3

that Sean received in November 2012 would not be considered income, "[a]ll other income," including Sun Days, would be considered income. The court ordered Sean to pay support arrearages by October 1, 2013, and Sean paid Tonya Ostler Smith child support and spousal support based on the $24,554.24 Sun Days payment he received in March 2012. The amount of that Ostler Smith payment was calculated using the formulae set forth in the 2010 decree.

In 2015, Sean received a $94,372.43 check from Sun Life. According to Sean, he attempted to find out what the check was for but was told by Sun Life that "there was no one that could help [him] since the business unit [he] worked for was closed." Sean deposited the check in April 2015 and did not tell Tonya about it.

In April 2016, Sean filed a petition in Washington to modify child support. The petition went to arbitration, and Tonya learned about the 2015 Sun Life check during discovery. Tonya also learned that Sun Life had miscalculated and underpaid Sean's Sun Days when it paid him $24,554.24 in March 2012 and that the 2015 check was issued to correct the error. In April 2017, Sean made an Ostler Smith child support payment to Tonya based on the 2015 Sun Days check. The amount of the April 2017 payment was calculated based on the Ostler Smith child support formula in the California court's April 2014 order.

In November 2017, Tonya filed a motion for contempt, arguing that Sean (1) owed interest on the April 2017 Ostler Smith child support payment, (2) failed to timely notify Tonya of the 2015 Sun Days check as required under the 2014 order, and (3) should be required to pay Ostler Smith spousal support on the

2015 Sun Days check under the 2010 decree. A commissioner concluded that Sean was in contempt for failing to disclose the 2015 Sun Days check and failing to timely pay Ostler Smith child support based on that check. The commissioner ordered Sean to pay interest on the Ostler Smith child support payment. But the commissioner also concluded that Sean was not in contempt with regard to spousal support, stating: "Spousal maintenance terminated in 2013. There is no evidence [Sean] colluded to hold back the Sun Life income." Accordingly, the commissioner did not order Ostler Smith spousal support.

Tonya moved for revision of the commissioner's order, arguing that Sean should be required to pay Ostler Smith spousal support based on the 2015 Sun Days check. The trial court agreed with Tonya and ordered that the commissioner's order be revised to read as follows:

> The Court finds Sun Life was contractually obligated to pay-out [Sean]'s Sun Life accrued but unused vacation pay ("Sun Days") in March 2012. Had Sun Life paid out [Sean]'s "Sun Days" when it was due per the contract in March 2012, [Sean] was obligated to pay 25% on the gross amount received. The California court intended that spousal maintenance be paid on [Sean]'s "Sun Days" income. Sun Life made a delayed payment of [Sean]'s "Sun Days" in the amount of $162,127.03[3] in March 2015, after the spousal maintenance obligation terminated. The mere fact that this payment was paid in March 2015 does not negate that the income was due and owing in March 2012 and does not avoid the spousal maintenance obligation on that sum. [Sean] owes [Tonya] spousal support in the amount of $40,531.75 (25% of the gross amount). A Judgment should enter for this amount, plus interest from 4/1/2015 – 12/31/2017 at 10%.

---

[3] The gross amount of the underpayment was $162,127.03. The net amount was $94,372.43, the amount of the check Sean received in 2015.

The court stated that it viewed the Sun Days income as "involuntary deferred compensation" and that "whether [Sean] was aware or not is not dispositive." The court reasoned that Sean's right to the Sun Days income accrued in March 2012, while Tonya was entitled to Ostler Smith spousal support under the 2010 decree.

In addition to ordering Sean to pay Ostler Smith spousal support under the 2010 decree based on the 2015 Sun Days check, the court also concluded that Sean overpaid his Ostler Smith child support payment in April 2017. The court explained that the Ostler Smith child support payment should have been based on the 11 percent formula from the 2010 decree, rather than the 11.66 percent formula from the 2014 order. The court also ordered Sean to pay interest on the Ostler Smith child support payment, calculated from April 1, 2015. Sean appeals.

## DISCUSSION

*Order on Revision*

Sean argues that the trial court erred by interpreting the California court's 2010 decree as requiring him to pay Ostler Smith spousal support based on a check he received in 2015. He also argues that Ostler Smith child support should have been calculated under the 2014 order, not the 2010 decree. We disagree.

Interpretation of a dissolution decree is a question of law that this court reviews de novo. In re Marriage of Thompson, 97 Wn. App. 873, 877, 988 P.2d 499 (1999). We apply California law to interpret the 2010 decree. See Shibley v.

6

Shibley, 181 Wash. 166, 168-70, 42 P.2d 446 (1935) (looking to California law to determine whether amounts claimed under California decree were accrued and due).

The 2010 decree was based on Sean and Tonya's written stipulation for judgment. Accordingly, under California law, the decree "represents an agreement, [and] thus must be analyzed and interpreted in light of the parties' mutual intent and according to statutory requirements for the interpretation of contracts." In re Marriage of Gray, 155 Cal. App. 4th 504, 522, 66 Cal. Rptr. 3d 87 (2007). Those requirements are similar to Washington's rules of contract interpretation and provide, among other things, that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity," CAL. CIV. CODE § 1638, and "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." CAL. CIV. CODE § 1641. Additionally, "[w]hen possible, courts should 'avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable.'" In re Marriage of Nassimi, 3 Cal. App. 5th 667, 688-89, 207 Cal. Rptr. 3d 764 (2016) (quoting ASP Props. Grp., L.P v. Fard, Inc., 133 Cal. App. 4th 1257, 1269, 35 Cal. Rptr. 3d 343 (2005)). These general rules for interpreting writings also apply to interpretation of the California court's 2014 order. Verdier v. Verdier, 121 Cal. App. 2d 190, 193, 263 P.2d 57 (1953) (Provisions of the constitution, statutes, contracts, judicial orders, and decrees "are all 'writings,' to be construed in accordance with substantially the same canons of interpretation.").

We conclude that under the plain language of the 2010 decree, Sean was required to pay Ostler Smith child support and spousal support on the 2015 Sun Days check. That decree plainly states that Ostler Smith support applies to "*any* of [Sean]'s gross monthly income from employment, including, *but not limited to . . .* deferred compensation." (Emphasis added.) And under California law, accrued vacation benefits are a form of deferred compensation. In re Marriage of Moore, 226 Cal. App. 4th 92, 102, 171 Cal. Rptr. 3d 762 (2014). Indeed, the California court confirmed in its 2014 order that Sun Days are income for purposes of support. Sean argues that this statement was intended only to apply to arrearages, but the 2014 order contains no such limitation.

Furthermore, taking the 2010 decree as a whole, other provisions of the decree reflect the parties' intent that Ostler Smith support be paid based on earned income, regardless of when it was received. For example, paragraph 23 of the decree provides that Sean's commissions earned during May 2013 (through the end of the maintenance period) would be included in the Ostler Smith calculation, even though those commissions would not be paid until after the end of the maintenance period. It also provides that Sean's commissions earned through May 31, 2010 (before the beginning of the maintenance period) would *not* be subject to Ostler Smith support, even though those commissions would be received during the maintenance term. These provisions demonstrate that the parties intended that Ostler Smith support apply to income earned during the maintenance term, regardless of when it was received.

Finally, concluding that Sean is *not* required to pay Ostler Smith spousal

support based on the 2015 check would lead to an absurd and inequitable result: Sean would be excused from paying spousal support on compensation he undisputedly earned during the maintenance term but, due to Sun Life's error, did not receive until after the maintenance term.

Sean argues that to reach the same conclusion as the trial court, this court would need to retroactively qualify the language in the 2010 decree providing that spousal support "shall absolutely terminate with the payment on May 15, 2013, and may not be extended for any reason whatsoever." He characterizes the trial court's decision as an impermissible extension of his spousal support obligation by arguing that the income subject to Ostler Smith support under the 2010 decree is limited to income received before May 15, 2013. Sean also points to language in the 2010 decree stating that Sean is to pay Ostler Smith support within 48 hours after *receiving* gross income in excess of $16,666.67. But Sean cites no authority for the proposition that "income" is limited to income actually received and excludes income earned but not yet received. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). And the language regarding receipt dictates only *when* Sean must pay Tonya Ostler Smith spousal support. It does not dictate what income is *subject to* Ostler Smith support. Sean's arguments are unpersuasive.

Sean next argues that the 2014 order governs here and that it eliminated any obligation to pay Ostler Smith support as of January 15, 2013, its effective

date. We disagree. As discussed, the obligation to pay <u>Ostler Smith</u> support on the 2015 Sun Days check arose under the 2010 decree, which clearly states that <u>Ostler Smith</u> support applies to deferred compensation.

Sean next relies on <u>In re Marriage of Iberti</u>, 55 Cal. App. 4th 1434, 64 Cal. Rptr. 2d 766 (1997), to argue that the trial court impermissibly qualified the 2010 decree to define "income" in terms of when it is "due and owing" to Sean. But <u>Iberti</u> did not involve <u>Ostler Smith</u> support or inform the issue of what a court should do if income subject to an <u>Ostler Smith</u> support provision goes unpaid due to the error of a third party. Rather, <u>Iberti</u> merely confirms that if the parties unambiguously agree that support cannot be extended, then the court may not extend support absent circumstances that implicate the court's inherent power to do justice, such as mutual mistake of fact or an unforeseen change in the law. <u>Iberti</u>, 55 Cal. App. 4th at 1441-42. But here, the trial court did not "extend" Sean's spousal support obligation. Instead, it ordered him to pay an obligation that accrued under the 2010 decree based on income that he undisputedly earned while that decree was in effect. Therefore, Sean's reliance on <u>Iberti</u> is misplaced.

Sean's reliance on <u>In re Marriage of Katz</u>, 201 Cal. App. 3d 1029, 247 Cal. Rptr. 562 (1988), is similarly misplaced. In <u>Katz</u>, the court declined to restore support payments seven years after the payments ended, finding it had no jurisdiction to award additional spousal support where the original order provided that payments would terminate after a specific date. <u>Katz</u>, 247 Cal. Rptr. at 1032, 1035. Here, unlike in <u>Katz</u>, Tonya did not ask the trial court to restore or,

10

as Sean puts it, "revive" a spousal support obligation that had already terminated. Rather, Tonya seeks to enforce Sean's obligation to pay spousal support based on income that he undisputedly earned and that was payable to him during the maintenance term. Katz does not require reversal.

Sean next asserts that the trial court's interpretation of the 2010 decree is inconsistent with the California court's intent underlying the spousal support award. He argues that the trial court's order leaves his spousal support obligation "open ended" and that nothing in the California court's orders supports a determination that the court intended for Tonya to receive a "windfall." But the trial court's order does not leave Sean's spousal support obligation "open ended." Indeed, Tonya does not claim Ostler Smith spousal support on any income Sean earned after January 15, 2013. And if the 2015 Sun Days check were exempt from Ostler Smith support simply because of Sun Life's error, it would be Sean, not Tonya, who would receive a "windfall." These arguments are not persuasive.

Sean also argues that Tonya should be estopped from arguing that Sun Days should be treated as 2012 income because during the arbitration on Sean's most recent motion to modify, Tonya took the position that Sun Days were 2015 income to support an award of child support above the standard calculation. This argument is unpersuasive for two reasons. First, Sean relies on Urbick v. Spencer Law Firm, LLC, 192 Wn. App 483, 367 P.3d 1103 (2016), but does not address the three "fundamental factors" described in that case for analyzing cases of judicial estoppel. See Urbick, 192 Wn. App. at 489 (citing Arkinson v. Ethan Allen, Inc., 160 Wn.2d 535, 538-59, 160 P.3d 13 (2007)). Second, the

11

arbitrator's decision to grant an upward deviation on child support was not based on a position taken by Tonya, but rather on the parties' *stipulation* as to the amount of Sean's monthly income and other relevant factors. These factors included Sean's financial resources, wealth, and high standard of living; the geographical separation between Sean and Tonya; the children's extracurricular activities and expenses; and the children's special needs. Although the arbitrator did take note of Sean's actual earnings, he did so in the portion of his decision analyzing whether there had been a substantial change in circumstances to support a modification, not in the portion of his decision in which he discussed the upward deviation. Sean's judicial estoppel argument is not persuasive.

As a final matter, Sean contends that the trial court erred because by treating 2015 income as income received in 2012, it deprived Sean of his ability to deduct the resulting spousal support payment for federal income tax purposes. But Sean cites no authority requiring this court to consider deductibility as a factor in interpreting the California court's decree. See DeHeer, 60 Wn.2d at 126 (where party cites no authority to support a proposition, the court may assume that counsel, after diligent search, has found none). Moreover, "[d]eductions are matters of legislative grace; taxpayers have no inherent right to them." Montgomery v. Comm'r of Internal Revenue, 64 T.C. 175, 182 (1975), affirmed, 532 F.2d 1008 (6th Cir. 1976). Sean's contention is not persuasive.

*Tonya's Request for Fees on Appeal*

Tonya requests fees on appeal. We grant her request.

In exercising our discretion to award fees, "'we consider the arguable merit of the issues on appeal and the parties' financial resources.'" In re Marriage of Aiken, 194 Wn. App. 159, 174, 374 P.3d 265 (2016) (quoting In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997), aff'd sub nom. In re Marriage of Caven, 136 Wn.2d 800, 966 P.2d 1247 (1998)). If an appeal lacks arguable merit, we may exercise our discretion to award fees to the respondent "without regard to her need or the appellant's ability to pay." In re Marriage of Greenlee, 65 Wn. App. 703, 711, 829 P.2d 1120 (1992).

Here, Sean's appeal is not completely without merit. Therefore, we focus on the parties' relative need and ability to pay. See Bower v. Reich, 89 Wn. App. 9, 20, 964 P.2d 359 (1997) (where there is merit to both sides' positions, focus is on parties' relative need and ability to pay). To that end, in Tonya's timely filed financial affidavit, she states that her actual income is less than what the arbitrator imputed to her in 2017. But even using the imputed amount and after child support transfer payments are taken into account, Tonya's income after expenses is only slightly more than $1,300 per month. Meanwhile, Sean, who earned more than $45,000 net per month in 2017, does not dispute that his income significantly exceeds Tonya's. We conclude that Tonya has demonstrated need and that Sean has the ability to pay. Therefore, we grant Tonya's request for fees subject to her compliance with RAP 18.1(d).

Sean argues that we should deny Tonya's request because she failed to

cite applicable law to advise the court of the basis for an award. But that is not the case: Tonya cited Marriage of Stenshoel, which confirms that both trial and appellate courts have discretion to award attorney fees under RCW 26.09.140. 72 Wn. App. 800, 813, 866 P.2d 635 (1993). Sean also argues that his superior ability to pay is not, alone, a basis to award fees to Tonya. But as discussed, our decision to award fees to Tonya is based not only on Sean's superior ability to pay, but also on Tonya's need. Sean's arguments are unpersuasive.

Sean next asserts that Tonya has not shown a "need" for her attorney fees to be paid. He points to Tonya's monthly surplus and quotes Coons v. Coons for the proposition that "need" means "'an absence of funds and a lack of ability to get them without extreme hardship.'" 6 Wn. App. 123, 126, 491 P.2d 1333 (1971) (quoting Johnson v. Johnson, 1 Wn. App. 527, 532, 462 P.2d 956 (1969)). But Sean ignores the first part of this quoted excerpt from Coons, where we also recognized that "'[n]eed in this sense does not necessarily mean destitution or poverty.'" 6 Wn. App. at 126 (quoting Johnson, 1 Wn. App. at 532). Where Tonya's monthly surplus is only slightly more than $1,300, Coons does not persuade us that Tonya has not established need.

As a final matter, Sean points out that in denying Tonya attorney fees in connection with the child support modification action, the arbitrator found that Tonya had amassed "substantial net worth." But the arbitrator's denial of fees was based not only on Tonya's net worth, but also on his decision not to make the reduction in child support retroactive. Furthermore, Washington law does not support Sean's suggestion that Tonya should be required to sell her real estate

14

holdings to pay her attorney fees.  See In re Marriage of Freedman, 35 Wn. App. 49, 54, 665 P.2d 902 (1983) (holding that trial court did not abuse discretion in awarding wife attorney fees where wife's affidavit stated she lacked liquid assets and there was considerable evidence of husband's net earnings).  Sean's arguments are unpersuasive.

Affirmed.

_____

WE CONCUR:

_____       _____