[No. F006180. Fifth Dist. Aug. 4, 1986.]

In re the Marriage of ANN T. and ROLAND V. HOWARD.
ANN T. HOWARD, Respondent, v.
ROLAND V. HOWARD, Appellant.

2

---

---

**COUNSEL**

Roland V. Howard, in pro. per., for Appellant.

Canelo, Hansen & Wilson and James P. Padron for Respondent.

## OPINION

**PAPADAKIS (V. N.), J.**\*—Appellant, Roland V. Howard, appeals from an order for sale of the family home.

An interlocutory judgment dissolving the marriage of Roland and Ann Howard was entered on June 13, 1979, and the final judgment was entered on January 3, 1980.

The judgment awarded exclusive use of the home to respondent (Ann) as additional child support until she remarried or until the youngest child reached the age of majority. Title to the house was to be held by Ann and Roland as tenants in common.

On May 29, 1985, Ann applied for modification of the judgment and obtained an order for the immediate sale of the family home because of a change of circumstances under authority of Civil Code section 4800.7.[1]

### FACTS

The approximately 20-year marriage of the parties ended in dissolution in 1979. Ann was awarded custody of their 8 children, who ranged in age from 10 months to 17 years. Roland was to pay $100 per month per child, and Ann was awarded exclusive use of the family home as additional child support until Ann remarried or the youngest child reached majority. At that time, the home was to be sold and the proceeds divided equally.

Roland paid required support only through the summer of 1979; thereafter, he paid only partial support and stopped altogether after December 1980.

In March of 1981, Ann began receiving aid to families with dependent children (AFDC). AFDC was then and is now her sole source of income.

Ann began a nursing program in Stockton in February 1985, but dropped out because of time and financial problems caused by the lengthy commute to and from Stockton. She has applied and been reaccepted to the nursing program but must move to Stockton to participate. The program will take two years to complete. After completion her estimated income would be $1,200 per month, which far exceeds the AFDC grant.

---

*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references are to the Civil Code unless otherwise indicated.

Four minor children and one 18-year-old continue to reside with Ann at their home in Merced. The home is in a good neighborhood but is in poor and deteriorating condition.

Following this presentation of evidence, the court found a sufficient change in circumstances had occurred and ordered the sale of the home.

## DISCUSSION

*Did the retroactive application of Section 4800.7 impair a vested property right of Roland Howard without due process of law.*[2]

On appeal, Roland contends the sole issue is whether the trial court correctly applied section 4800.7. His argument states that the retroactive application of this section is an impairment of his vested property right and, hence, is unconstitutional. No argument is presented challenging the findings that this was a "family home award" and that there was a "change in circumstances affecting the economic status of the parties."

Retroactive application of a statute may be unconstitutional if it is an ex post facto law, if it impairs the obligation of a contract or if it deprives a person of a vested property right without due process of law. (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354].)

Roland's constitutional challenge is based on an alleged impairment of vested property rights. However, he fails to assert clearly what vested property rights he has that are being impaired. He cites *Tuve* v. *Tuve* (1969) 270 Cal.App.2d 79 [75 Cal.Rptr. 613], for the proposition that an action in partition was Ann's sole remedy. *Tuve,* however, is not applicable to the facts of this case. In *Tuve,* the dissolution judgment awarded a two-thirds interest in the family residence to the wife as her separate property and the

---

[2]Civil Code section 4800.7 provides in pertinent part:

"(a) . . . 'family home award' means an order that awards temporary use of the family home to the party having custody of minor children . . . in order to minimize the adverse impact of dissolution . . . on the welfare of the children.

"(b) Except as otherwise agreed to by the parties in writing:

"(1) A family home award may be modified or terminated at any time at the discretion of the court.

"(2) If the party awarded the temporary use of the family home remarries, or there is otherwise a change in circumstances affecting the economic status of the parties or the children on which the award is based, a rebuttable presumption, affecting the burden of proof, is created that further delay in the sale of the family home and division of the proceeds of the sale is no longer an equitable method of minimizing the adverse impact of the dissolution . . . on the welfare of the children.

"(c) The provisions of this section are applicable regardless of whether the family home award is made before or after January 1, 1985."

other one-third to the husband as his separate property. The wife was awarded exclusive use of the property until the youngest child reached majority. The judgment contained no order providing for sale or partition at the end of the wife's exclusive right of occupancy. (*Tuve* v. *Tuve, supra,* 270 Cal.App.2d at pp. 80-81.)

The husband subsequently filed a motion for modification, seeking in part a sale of the property and division of the proceeds. The husband's motion was instigated because the residence had been partially destroyed by fire, the wife ceased to live on the property, and the property was deteriorating. The trial court modified the decree, ordering the immediate sale of the property. On appeal, the wife successfully argued the trial court lacked jurisdiction to modify the final judgment regarding property rights.

The *Tuve* court noted that the original judgment made no provision for sale or partition and therefore failed to reserve jurisdiction to order a sale. Hence, the trial court was without jurisdiction to modify the property rights of the parties, which became final at the time of the judgment. (*Tuve* v. *Tuve, supra,* 270 Cal.App.2d at pp. 82-83.) This holding is further supported by *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, footnote 13 [126 Cal.Rptr. 633, 544 P.2d 561].

■ The case at bar is clearly distinguishable. Here, the judgment did not make a present unconditional award of property rights. The order awards title to Ann and Roland to be held as tenants in common, expressly subject to the property being sold at a future date with the proceeds being divided equally at that time. When the trial court ordered the house sold, it changed no vested property right previously awarded to Roland. Roland's title as a tenant in common always was subject to divestment or termination at the time the house was sold.

The trial court here merely changed the circumstances or conditions which would end Ann's right to exclusive use, thus requiring a sale according to the original order. This action is supported by *Fairchild* v. *Fairchild* (1948) 87 Cal.App.2d 172 [196 P.2d 60]. In *Fairchild,* the original judgment of dissolution gave the wife the right to occupy the family home as long as she desired, and when she found it convenient to vacate the home, it would be sold at a price agreed by the parties. If the parties disagreed, the property would be subject to partition by further order of the court, and the proceeds from the sale would be divided equally. (*Id.,* at p. 173.) The husband moved for and was granted a modification that provided the house would be held in joint tenancy, deleting provisions for partition and sale after the wife tired of occupying the house.

The appellate court in *Fairchild* found that the language in the decree reserved to the court continuing jurisdiction. It also held the modification did not alter any substantive right of the parties. The wife contended that the modification infringed upon a vested property right to occupy the home. The appellate court, however, found that the right of occupancy was a "convenience" of the wife, which could not "be tortured into a vested property right which would defeat the entire purpose of the agreement of the parties and the judgment of the court." (*Fairchild* v. *Fairchild, supra,* 87 Cal.App.2d at p. 174.)

In the instant case, a review of the original award indicates that, similar to *Fairchild,* the award was a temporary privilege subject to change or modification by the court to effectuate the purpose of the award. Neither Ann nor Roland were given vested property rights which precluded modification under changed circumstances.

Furthermore, the award here clearly was intended as additional child support; hence, it was modifiable, without an express reservation of jurisdiction, if to do so would benefit the children. (*In re Marriage of Boseman* (1973) 31 Cal.App.3d 372, 376-378 [107 Cal.Rptr. 232]; see *In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361, 364-365 [148 Cal.Rptr. 550].)

 Even assuming that Roland had some vested property right, which was impaired or deprived by the court's order under section 4800.7, Roland has failed to show that such denied him due process.

He claims the retroactive application of sections 4800.1 and 4800.2 has been held to violate due process, and because section 4800.7 is part of the same legislative package, it also must be unconstitutional. This argument is unpersuasive. Contrary to Roland's assertion, the former sections were added in 1983 under separate legislation from section 4800.7, which was enacted in 1984. Additionally, an analysis of section 4800.7 regarding retroactive application shows no violation of due process rights.

*In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], established the test to determine whether a provision contravenes due process. The test set forth in *Bouquet* regarding retroactive application looked to "the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*In re Marriage of Bouquet, supra,* 16 Cal.3d

at p. 592.) Furthermore, "where 'retroactive application is necessary to subserve a sufficiently important state interest' . . . the inquiry need proceed no further." (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761.)

*Bouquet* held the retroactive application of amended section 5118 did not constitute an unconstitutional deprivation of vested property rights. The amended section provides that the earnings of a spouse, while living separate from another spouse, are the separate property of the spouse. Prior law made only the wife's earnings separate property while she lived apart from her husband; the husband's earnings were considered community property. The *Bouquet* court found that retroactive application of section 5118 denied a wife certain vested property rights acquired in the husband's earnings while the two spouses lived apart. Retroactive application of the statute, nevertheless, was not violative of due process because it promoted the state's paramount interest in the equitable distribution of marital property upon dissolution of the marriage and reversed an injustice in the previous law. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 592-594.) Under the facts of the present case, retroactive application of section 4800.7 also promotes the state's interest in equitable distribution of marital property and alleviates a potential unjust result in the prior law.

Subdivision (a) of section 4800.7 defines a family home award. This enactment recognizes the previously established principle that children could be traumatized unduly by having to move away from an established home where they have become "firmly entwined in the school and social milieu of their neighborhood." (See *In re Marriage of Duke* (1980) 101 Cal.App.3d 152, 156 [161 Cal.Rptr. 444].) Even when a home is sold and the proceeds divided, economic factors such as inflation and limited earning capacity of the custodial spouse might severely hamper the custodial parent from providing adequate housing for the minor children. (*Ibid.*)

Subdivision (b) of section 4800.7 governs the trial court's power to modify or terminate an award in the absence of a contrary agreement in writing, and subdivision (c) makes the provisions retroactive.

Whenever a court grants a temporary family home award of community property, the noncustodial spouse's property rights under section 4800, subdivision (a), are delayed temporarily. Section 4800, subdivision (a), grants to the parties in a dissolution proceeding the right to an equal division of community property at the time of the dissolution. The enjoyment of these property rights, however, is delayed when the custodial spouse is granted a family home award, which is made for the benefit of minor children, thus providing them with a stable environment. A trial court's order will often provide for the termination of a family home award on the following

contingencies: (1) when the children reach the age of majority; or (2) when the custodial spouse remarries or otherwise brings added income into the home. These contingencies are chosen because their occurrence usually alleviates the great need for the children to remain in the family home. Obviously an extensive period of time could pass before these contingencies occur, which would delay the noncustodial spouse's right to an equal division of community property rights.

Should we assume Roland is correct that the law prior to the enactment of section 4800.7 would have required the parties to wait until the contingencies occurred before seeking a sale of the home, this state of the law would have operated to prolong an unfair and unequal division of property. Trial courts cannot contemplate every single change in circumstances that might affect the needs of minor children. Hence, a situation may arise wherein the children no longer need the house for their welfare, yet the noncustodial parent is precluded from enjoying his or her share of the community simply because the exact conditions stated in the original order have not yet occurred. Another unfair result, as demonstrated by this case, would be that the custodial spouse and the minor children may be trapped into an unhealthy environment.

Section 4800.7, subdivision (b), however, provides trial courts in all cases with the discretion to modify or terminate a family home award upon a change in circumstances. Granting the court the flexibility to review these awards promotes fairness and equality of property division. The trial court always will be able to terminate the award when it becomes obvious, due to changing circumstances, that the children no longer need the use of the home for their welfare. Unnecessary and unfair delays in the enjoyment of community property rights are alleviated. Clearly, retroactive application of section 4800.7 promotes the "equitable distribution of marital property upon dissolution," and such is a sufficiently important state interest to overcome Roland's due process challenge. The California Supreme Court has recognized that such an important state interest may justify the retroactive application of a statute. The impairment of any vested rights here due to such retroactive application of section 4800.7 does not violate due process. (See *In re Marriage of Buol, supra,* 39 Cal.3d at p. 761; *In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 594.)

The trial court was correct to apply section 4800.7 to this case, and the trial court properly exercised discretion to find a sufficient change in circumstance justifying an order for the immediate sale of the Howard residence.

The judgment is affirmed. Costs are awarded to Ann as the party prevailing on appeal.

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.