[No. G003074. Fourth Dist., Div. Three. Apr. 28, 1987.]

In re the Marriage of CAROL ANN and JAMES NORMAN GUTHRIE, JR.
JAMES NORMAN GUTHRIE, JR., Appellant, v.
CAROL ANN GUTHRIE, Respondent.

COUNSEL

John R. Schilling and Marjorie G. Fuller for Appellant.

J. Thomas Bowne for Respondent.

OPINION

**TROTTER, P. J.**—In this case of first impression we are asked to decide whether a trial court has discretion under recently enacted Civil Code section 4800.7 to modify or terminate a family home award to which the parties stipulated prior to the statute's enactment.

James and Carol Guthrie separated in February 1978 after almost seven years of marriage. James moved out of the family home while Carol remained with their two sons, Bryan, then four and one-half years old, and Brett, then five months old. A marital dissolution proceeding was instituted in May 1980. The following December James and Carol executed a settlement agreement in which they "agreed to specific terms of support and maintenance for [Carol] and [the] children by [James], custody of the children, and division of the community property, and the use of the family residence pending its sale." The terms of the agreement were incorporated into an interlocutory judgment of dissolution of marriage entered April 15, 1981.

The marital settlement agreement provided for the division of all of the parties' community assets.[1] Title to the family residence would be held by James and Carol as tenants in common pending its eventual sale. Until then

---

[1]The community estate consisted of an interest in a limited partership, six life insurance policies, a savings account, a credit union account, a 1978 station wagon, a coin collection, household furniture and furnishings, and a house in Newport Beach.

Carol could occupy the home, at her election, "as long as at least one of [the parties' sons] resides with her and the one residing with her has not yet reached the age of eighteen (18) years." At such time as Carol vacated the residence it would be immediately placed on the market for sale at the highest price reasonably obtainable and the proceeds equally divided, subject, however, to appropriate credits for any improvements made by either party. Pending the sale James would be responsible for one-half of all mortgage payments, real estate taxes, community association dues, insurance premiums, and costs of repair and maintenance.

The agreement also provided for James to pay child support of $150 per month for each child until November 1, 1983, at which time his obligation would double. In addition, James would pay spousal support to Carol for three years at the rate of $900 per month the first year, $1,000 the second year, and $1,100 the final year. From each payment the sum of $361 would be earmarked as James's share of maintaining the family home (including $251 representing one-half of the mortgage payment) and therefore would not constitute income to Carol. Carol's right to receive further support "in any form whatsoever" would terminate on November 1, 1983.

In March 1985 James applied for a modification of the judgment with respect to the sale of the family residence. His request, made just three months after the effective date of Civil Code section 4800.7,[2] sought to "modify the existing order regarding the family residence so as to permit its immediate listing and sale in that . . . there [had] been a substantial change in the circumstances affecting the economic status of [Carol], [himself] and the children, which formed the basis for [their] original agreement." He argued the provisions in the 1980 marital settlement agreement allowing Carol to remain in the house were "a result of the [parties'] mutual desire

---

[2]Civil Code section 4800.7, as originally enacted, provided as follows: "(a) As used in this section, 'family home award' means an order that awards temporary use of the family home to the party having custody of minor children in order to minimize the adverse impact of dissolution or legal separation on the welfare of the children.

"(b) Except as otherwise agreed to by the parties in writing: [¶] (1) A family home award may be modified or terminated at any time at the discretion of the court. [¶] (2) If the party awarded the temporary use of the family home remarries, or there is otherwise a change in circumstances affecting the economic status of the parties or the children on which the award is based, a rebuttable presumption, affecting the burden of proof, is created that further delay in the sale of the family home and division of the proceeds of the sale is no longer an equitable method of minimizing the adverse impact of the dissolution . . . on the welfare of the children.

"(c) The provisions of this section shall be applicable regardless of whether the family home award is made before or after January 1, 1985."

Section 4800.7 was amended by Statutes 1985, chapter 419, section 4, effective January 1, 1986. The amendment inserted "and children for whom support is authorized under Section 206" after the words "minor children" in subdivision (a), and substituted "are" for "shall be" in subdivision (c).

All further statutory references are to the Civil Code unless otherwise indicated.

... to attempt to minimize the impact of the dissolution of [their] marriage on the children . . . ." He pointed out more than four years had elapsed since the parties' settlement, and more than seven years since their separation. He had remarried and was now responsible for the support of his present wife, whereas Carol had become employed and was contributing towards her own support as well as the children's. Moreover, the house had increased in value, and he estimated that the equity to be shared between Carol and himself was between $190,000 and $220,000. He wanted to start a new life and needed his share of the equity to do so. Unless the provision was modified, he would have to wait until 1995 to accomplish his goal. Finally, he believed it was "[no] longer equitable for [his] share of the residence to be forcibly held in that any adverse impact on the children from [the] dissolution [had] been eliminated due to the substantial passage of time . . . ."

At the hearing the trial judge concluded he lacked jurisdiction to modify the parties' agreement with respect to the family residence.[3] In his opinion "the Legislature [had taken] steps to . . . place before the court the discretion to modify or change those orders. But [it] did so in recognition of one of the realities of life, and that is if we have a contract that's not contrary to public policy that you basically can't legislate that contract out of existence. Can't take what parties agreed to and say one, two, five years later, well, we decided we are going to relieve one or the other of the parties from the obligations that are created by that contract . . . ." The court believed this was the reason the Legislature inserted the introductory language in subdivision (b) of the statute, i.e., "except as otherwise agreed to by the parties in writing." The court's statement of decision indicates the ruling was based "upon a holding that [the] language [in the first sentence of subparagraph (b)] makes . . . [s]ection 4800.7 inapplicable to orders relating to a family home, based upon an agreement by the parties in writing."

Before the enactment of section 4800.7 a trial judge had discretion to defer the sale of a family home and award temporary possession to the custodial parent as a form of child support. (*In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361 [148 Cal.Rptr. 550]; *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372 [107 Cal.Rptr. 232].) Such arrangement was also justified for noneconomic reasons: "[T]he subjective noneconomic impact on the family unit from being deprived of a home environment to which the chil-

---

[3]After the court rendered its ruling, the hearing proceeded on Carol's application for increased child support which had been consolidated with James's request regarding sale of the house.

According to Carol's moving papers, her sons' behavioral problems required her presence at home after school; thus, she was able to work only part-time at a preschool located about a mile away. Her older son was diagnosed as dyslexic; the younger one was hyperactive. Their tutoring expenses had increased in the past year from $100 to $600 per month.

The record discloses support was increased from $300 to $450 per month for each child.

dren have become accustomed is sufficiently significant to allow the court to enter a conditional order ... so long as undue hardship is not imposed on the noncustodial parent." (*In re Marriage of Duke* (1980) 101 Cal.App.3d 152, 157 [161 Cal.Rptr. 444].)

Thus, the trial court could award temporary use of the family home to the party having custody of minor children subject to whatever contingencies it deemed appropriate under the circumstances to protect the party not in possession. And unless the award was designated as additional child support, in which event it could be modified at any time upon a showing of changed circumstances (see, e.g., *In re Marriage of Boseman, supra,* 31 Cal.App.3d at p. 377), modification would be appropriate only upon the occurrence of a specified contingency.

In *In re Marriage of Escamilla* (1982) 127 Cal.App.3d 963 [179 Cal.Rptr. 842], the trial court imposed eight such contingencies. The appellate court struck two of them which pertained to remarriage of the custodial parent and use of the home as a personal residence by an unrelated adult male. It found both of these conditions could have no perceivable adverse impact upon "the children's need to live in the house as a means of support." (*Id.,* at p. 970.) The Legislature responded with section 4800.7, the purpose of which was to establish a rebuttable presumption the award be terminated if the custodial parent remarried or there was change in economic circumstances[4] of the parties or children. (See Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2739 (1983-84 Reg. Sess.) as amended Mar. 13, 1984; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2739 (1983-84 Reg. Sess.) as amended June 14, 1984.)[5]

Section 4800.7, subdivision (b), does two things: it grants the trial court discretion to modify or terminate a family home award at any time (§ 4800.7, subd. (b)(1)) and creates a rebuttable presumption that further delay in selling the home and dividing the proceeds "is no longer an equitable method of minimizing the adverse impact of the dissolution ... on the welfare of

---

[4]See *In re Marriage of Gonzales* (1981) 116 Cal.App.3d 556 [172 Cal.Rptr. 179] where a judgment awarding a former wife the sole right to the use and possession of the family home provided that unless sooner modified in accordance with the order, the house would be sold when the youngest child attained age 18. It also provided for the court to retain jurisdiction over the property for the purpose of modifying the order on a change of circumstances including but not limited to the wife living on the premises with a male adult other than her former husband. The appellate court found the provision was acceptable to the extent cohabitation constitutes a change of economic circumstances.

[5]We note with interest the Legislature's placement of the statute following section 4800 providing for property division rather than section 4700 dealing with child support. Section 4800.7 in fact is silent with respect to the award's use as additional child support. It defines "family home award" only in terms of "minimiz[ing] the adverse impact of dissolution or legal separation on the welfare of the children." (§ 4800.7, subd. (a).)

the children" if the in-house spouse has remarried or there is a change in economic circumstances affecting the parties or the children (§ 4800.7, subd. (b)(2)). The parties may, however, agree in writing the award may *not* be modified or terminated and/or the custodial parent's remarriage or change in economic circumstances will *not* create the presumption referred to in subdivision (b)(2).

James contends the fact he and Carol stipulated to the award is of no moment because the scope of section 4800.7 clearly is not limited to "court-imposed" family home awards. He asserts the language in question invests the trial court with jurisdiction to modify or terminate a family home award *unless* the parties had specifically agreed in writing the award could not be modified or terminated. He analogizes the award to one for spousal support made pursuant to section 4811, subdivision (b), which affords parties to a marital settlement agreement an opportunity to make their agreement nonmodifiable, and absent such language the agreement may be modified.

Carol argues the "otherwise agreed" language means the parties need only reach an agreement inconsistent with modification and that specific words of nonmodifiability are unnecessary. She contends James's analogy to section 4811, subdivision (b) is misplaced because that section requires *specific* language to the contrary. The instant agreement, she points out, expressly provided for modification or termination of the temporary arrangement in one of two situations—at her election or at such time as a minor child was no longer residing with her. In her view these are the *only* circumstances under which the agreement could be modified, and the absence of any other contingencies such as remarriage or change in economic circumstances, demonstrates the parties intended to "otherwise agree."

Carol also contends retroactive application of section 4800.7 is unconstitutional as an impairment of a contractual right.[6] (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) ■ Our Supreme Court has "long held that the retrospective application of a statute may be unconstitutional if it is an ex post facto law, if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract. [Citations.]" (*In re*

---

[6]Carol argues her agreement with James "guaranteed [her] a place to live with their children at her election until *she* elected to move, until neither of the children resided with her, or until they became adults. [She] would not have to worry [about] rent increases. [She] could base the myriad of decisions she would make regarding her life and the lives of their children over the years on the assurance that absent the children leaving her household or her election to do so, no change of residence would be required of her until the youngest was 18 years old. [James], in agreeing to this arrangement, presumably knew that his equity in the home could be tied up for many years, but he voluntarily agreed to the arrangement."

*Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354].)

We need not address the extent to which section 4800.7 contemplates the use of specific words of nonmodifiability. Nor must we decide if James and Carol, by stipulating to a family home award, "agreed otherwise" so as to preclude modification or termination of the award. As we shall explain, under the facts presented section 4800.7 is unconstitutional as an impairment of a contractual right. Unless it was intended as additional child support, the award is not subject to modification.

The constitutionality of section 4800.7's retroactive application was addressed in *In re Marriage of Howard* (1986) 184 Cal.App.3d 1. [228 Cal.Rptr. 813]. There, an interlocutory judgment entered before section 4800.7's effective date awarded the wife custody of the parties' eight children, monthly child support of $100 for each child, and "exclusive use of the family home as additional child support until [the wife] remarried or the youngest child reached majority." (*Id.,* at p. 3.) The house would then be sold and the proceeds equally divided. In May 1985 the wife, pursuant to section 4800.7, applied for and obtained an order for sale of the house based on changed circumstances, i.e., her participation in a nursing education program was dependent upon her relocation to another city. The husband appealed, claiming retroactive application was unconstitutional in that it impaired his vested property right.

The appellate court disagreed: "When the trial court ordered the house sold, it changed no vested property right previously awarded to [the husband]. [His] title as a tenant in common always was subject to divestment or termination at the time the house was sold. [¶] The trial court here merely changed the circumstances or conditions which would end [the wife's] right to exclusive use, thus requiring a sale according to the original order." (*Id.,* at p. 5.) Significantly, the court also observed "the award . . . was intended as additional child support; hence, it was modifiable, without an express reservation of jurisdiction, if to do so would benefit the children. [Citations.]" (*Id.,* at p. 6.)

The *Howard* court further noted even if the husband had a vested property right which had been impaired by the court's order, he failed to show he was denied due process. "The test set forth in *Bouquet* [*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 (128 Cal.Rptr. 427, 546 P.2d 1371)] regarding retroactive application looked to 'the significance of the state interest served by the law, the importance of the retroactive application of the law to the

effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions.' [Citation.] Furthermore, 'where "retroactive application is necessary to subserve a sufficiently important state interest" ... the inquiry need proceed no further.' [Citation.]" (*In re Marriage of Howard, supra,* 184 Cal.App.3d at pp. 6-7.)

Thus, said the court, "retroactive application of section 4800.7 ... promotes the state's interest in equitable distribution of marital property and alleviates a potential unjust result in the prior law." (*Id.,* at p. 7.) The court noted the "state of the law [before section 4800.7] would have operated to prolong an unfair and unequal division of property. Trial courts cannot contemplate every single change in circumstances that might affect the needs of minor children. Hence, a situation may arise wherein the children no longer need the house for their welfare, yet the noncustodial parent is precluded from enjoying his or her share of the community simply because the exact conditions stated in the original order have not yet occurred. ... [¶] ... The trial court always will be able to terminate the award when it becomes obvious, due to changing circumstances, that the children no longer need the use of the home for their welfare. Unnecessary and unfair delays in the enjoyment of community property rights are alleviated." (*Id.,* at p. 8.)

 *Howard* is not, however, dispositive. The cases are distinguishable in one crucial respect: Unlike the Howards, the Guthries stipulated to the family home award.[7] And to the extent the award was an integral part of the Guthries' stipulated property division, it cannot be modified. (*Bradley v. Superior Court* (1957) 48 Cal.2d 509, 518-519 [310 P.2d 634].) "Neither the court nor the Legislature may impair the obligation of a valid contract [citation] and a court cannot lawfully disregard the provisions of such contracts or deny to either party his rights thereunder. [Citations.]" (*Id.,* at p. 519.) Modification pursuant to the statute would therefore impair Carol's *contractual* right to stay in the house.

---

[7]We note the *Howard* court relied in part on *Fairchild* v. *Fairchild* (1948) 87 Cal.App.2d 172 [196 P.2d 60], a case which *did* involve a stipulated order.

In *Fairchild* the spouses stipulated in open court to an order permitting the wife to occupy the family home until such time as it was "convenient" for her to leave. The trial court subsequently modified the provision by eliminating the wife's right to occupy the property, and the appellate court affirmed, noting the trial judge " 'construe[d] [the] decree in the light of the circumstances that are shown by it, that the possession of the property was by way of alimony, support, and therefore the court has continuing jurisdiction over it.' ... [Thus, t]he virtual effect of the judgment was to award additional support for appellant and her child. The jurisdiction of the trial court to modify such an award continue[d] even without a reservation of the power to modify. [Citations.]" (*Id.,* at pp. 174-175.)

As stated below, the record here is inadequate so as to permit us to reach the same conclusion.

■ Although Carol asserts the statute's retroactive application is unconstitutional as an impairment of a *contractual* right, we apply virtually the same due process test as in *Howard*. Once it has been established that the state in the exercise of its police power has abridged an existing contractual relationship, the next step is whether the "impairment exceeds constitutional bounds." (*City of Torrance* v. *Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 377 [185 Cal.Rptr. 645, 650 P.2d 1162].) The criteria for making *this* determination are essentially the same as those for determining whether the impairment of a vested property right violates due process. (*Donlan* v. *Weaver* (1981) 118 Cal.App.3d 675, 684 [173 Cal.Rptr. 566].)

■ ■ Here, we find retroactive application of the statute would violate Carol's right to due process. While there is no doubt section 4800.7 promotes the state's interest in equitable distribution of marital property upon dissolution, it is questionable if a delay in the sale of a family home "operate[s] to prolong an unfair and unequal division of property" so as to warrant retroactive application where the parties agreed to the deferral in the first place. Indeed, section 4800.7's provision the parties must "agree otherwise" with respect to modifiability of their arrangement, if interpreted as James suggests, imposes upon Carol a requirement with which she cannot now comply. In *In re Marriage of Buol, supra,* 39 Cal.3d 751, our Supreme Court held section 4800.1's retroactive application unconstitutional since it would substantially impair vested property rights without due process of law. Referring to *In re Marriage of Martinez* (1984) 156 Cal.App.3d 20 [202 Cal.Rptr. 646], one of the Court of Appeal decisions disapproved in *Buol,* the high court noted: "Section 4800.1 imposes a statute of frauds where there was none before, penalizing the unwary for relying upon the law as it existed at the time the property rights were created rather than at the time dissolution proceedings were already underway. This paradoxical approach is aptly illustrated by the *Martinez* court's gratuitous offer to remand that case 'in fairness to [the husband] . . . for a hearing at which he shall have the opportunity to prove a written agreement in accordance with section 4800.1.' [Citation.] Understandably, the court refrains from suggesting just how the husband might go about creating the document that is missing solely because it was never required to prove a separate property interest under former law." (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 759; see also *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 450-451 [224 Cal.Rptr. 333, 715 P.2d 253].) The court later observed: "Had existing law required the parties to execute a writing as proof that the property was to remain separate, the likelihood that [they] would have done so appears great." (39 Cal.3d at p. 763.) Similarly, had the law at the time Carol and James entered into their agreement required them to specify the provision was nonmodifiable, we think it likely they would have.

There is, however, a significant difference between the retroactive effect of section 4800.1, addressed by the *Buol* court, and section 4800.7. As we noted earlier, a trial court had discretion to modify a family home award intended as additional child support, upon a showing of changed circumstances and without a reservation of jurisdiction, prior to the enactment of section 4800.7. (*In re Marriage of Boseman, supra,* 31 Cal.App.3d at p. 377; see also *In re Marriage of Howard, supra,* 184 Cal.App.3d at p. 6; *Fairchild v. Fairchild, supra,* 87 Cal.App.2d at p. 175.) We find the trial court's jurisdiction to modify or terminate a family home award based on an agreement of the parties entered into before the enactment of section 4800.7 depends upon whether the award was intended as additional child support.[8] If so, then the award is modifiable; if not, we find section 4800.7 no authority for the impingement of contractual rights. Here, the marital settlement agreement is silent on this point. Although we have difficulty divining any other logical purpose or reason for the provision, we need not speculate. The trial court is in a position to decide the issue.

The order is reversed and the matter is remanded to the trial court for a determination whether the family home award to which the parties stipulated was intended as additional child support. If the court finds the award was so intended, it may proceed to hear and determine the merits of James's order to show cause re modification.

Sonenshine, J., and Crosby, J., concurred.

A petition for a rehearing was denied May 27, 1987.

---

[8]We need not consider whether the same result would obtain in the case of spousal support because here a fair reading of the agreement clearly demonstrates that the family home arrangement was not in any way connected with spousal support.