[No. B026550. Second Dist., Div. Five. June 3, 1988.]

In re the Marriage of SUSIE and MARVIN S. KATZ.
SUSIE KATZ, Appellant, v.
MARVIN S. KATZ, Respondent.

**COUNSEL**

Bernard Silverman for Appellant.

Marvin S. Katz, in pro. per., for Respondent.

**OPINION**

**BOREN, J.**—Susie Katz appeals from portions of the trial court's decision modifying a marriage dissolution decree. Specifically, appellant objects to the court's determinations that (1) it lacked jurisdiction to reinstate the spousal support payments which had lapsed seven years earlier under the terms of the original dissolution decree, (2) the family residence should be sold and the sale proceeds divided as community property because appellant no longer had primary custody of any of her children, and (3) it lacked power to award child support to a parent who has secondary physical custody of a minor child. We agree with the trial court's rulings regarding spousal support and the sale of the family residence, but remand the case to the trial court for a factual determination of whether this is a proper case in which to award child support to a parent with secondary physical custody.

FACTS

The marital relationship between appellant and respondent Marvin Katz culminated in an interlocutory judgment of dissolution of marriage in 1978, after a 12-year marriage which produced 3 children.[1] In the interlocutory judgment, appellant received custody of the children, and respondent agreed to make monthly child support payments until the children reached

---

[1] No final dissolution decree is contained in the record on appeal.

the age of majority, unless judicially modified, as well as spousal support payments lasting until September 1980.[2] In addition, appellant received the right to the exclusive occupancy of the family home in Beverly Hills—which is owned equally by the Katzes as tenants in common—until July 1, 1990, but this right was contingent upon, among other things, her continued residence with at least one of the couple's children. Respondent was responsible for all mortgage, tax and insurance payments on the house.

On September 11, 1986, an order modifying the interlocutory judgment was filed based on the Katzes' stipulation to transfer custody of their son Jeffrey from appellant to respondent. Jeffrey, who was 14 years old at the time, was the only one of the three Katz children who had not yet reached the age of majority. The parties also stipulated that respondent was no longer obligated to pay child support for Jeffrey.

Three weeks later, respondent petitioned the court for an order allowing the sale of the family house. He also sought to terminate his obligation to make any further mortgage, tax, or insurance payments on the house. The grounds for the petition were that none of the couple's children were living with appellant, therefore she no longer had any right to continued residence in the house under the interlocutory judgment. Respondent stated that he had custody of Jeffrey and that Vickie, the couple's 18-year-old daughter, also resided at his home. Respondent had not sought any contributions from appellant for the support of these children. Furthermore, respondent alone was paying for the college education of the couple's eldest child, Ronald, which amounted to $14,000 per year. Because of these changed circumstances, respondent argued that appellant did not need to live in a $650,000, five-bedroom house for which respondent paid approximately $460 per month.[3]

Appellant countered by requesting a modification of the interlocutory judgment to obtain joint legal and physical custody of Jeffrey, whom she believed wanted to move back into the family house once he was old enough to drive. She also asked that the court restore reasonable child and spousal support. She objected to respondent's request to sell the house, reasoning that it was a form of spousal or family support which by its terms could not terminate until 1990, when Jeffrey would turn 18. In this regard, she noted that Jeffrey would be spending part of his time in the house, and that Ronald spent time there during his summer vacations. Appellant argued

---

[2] Other limiting factors were placed on the support awards in the interlocutory judgment, but those factors are not germane to this appeal.

[3] Respondent testified that the fair market value of the house is $625,000 to $650,000, and that $36,000 remains owing on it. The interlocutory judgment specifies that the house is community property and the proceeds from its sale are to be divided equally between the Katzes.

that respondent was unfairly trying to gain the court's sympathy by complaining of his financial state when in fact he is an experienced lawyer and business executive, whereas she earns little money as a secretary and clerical worker, and lives frugally. She did not believe it would be possible for her to rent an apartment and accommodate her children if the house was sold.

In his responsive papers, respondent acceded to appellant's request for joint legal custody, but opposed her other requests and stated that he felt her sole motivation for seeking the modification was to hold onto the family house. He noted that appellant had made little effort to see Jeffrey once he moved in with respondent. Respondent objected to appellant's request for renewed spousal support since she had, with the advice of counsel, agreed that such payments would end in 1980. Finally, respondent sought to be reimbursed by appellant for the payments he had made on the family residence.

A hearing was held on January 27, 1987, in which the court received testimony from appellant and respondent, and conducted an in camera interview with the parties' son Jeffrey. Based upon the written and oral evidence—particularly upon Jeffrey's desire to continue residing with his father and appellant's focus on her own needs rather than Jeffrey's needs—the court concluded that respondent should retain primary physical custody of Jeffrey with secondary periods of physical custody to appellant on alternate weekends and sharing of vacation times. Pursuant to stipulation, the court ordered joint legal custody of Jeffrey.

At a subsequent hearing on February 6, 1987, the court resolved the remaining issues regarding spousal support, child support and the sale of the family house. It concluded that (1) it lacked jurisdiction to extend or reinstate spousal support payments, (2) respondent was not entitled to reimbursement for his house payments, except for those incurred after February 1, 1987, (3) it could not award child support to appellant because she is a nonprimary custodial parent, and (4) the interlocutory judgment would be modified to allow the family house to be listed for sale by November 1, 1987. The court also ordered respondent to pay appellant's counsel $3,000 in attorney's fees.

## DISCUSSION

1. *Did the Trial Court Have Jurisdiction to Reinstate Spousal Support?*

Appellant believes the trial court erred in determining that it lacked jurisdiction to reinstate spousal support.

■ Civil Code section 4801, subdivision (d) provides that "An order for payment of an allowance for the support of one of the parties shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction." The purpose of this provision is to "put the supporting spouse on notice that the court has jurisdiction to extend the spousal support payments [citation], and to inform the supported spouse of the time within which he or she must petition for additional relief [citation]." (*In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 467 [204 Cal.Rptr. 568, 683 P.2d 248].)

In this case, the section of the interlocutory judgment entitled "Spousal Support" provides that respondent's obligation to support appellant would "fully and finally terminate automatically on September 11, 1980." In the absence of any provision in the decree conferring an express reservation of jurisdiction, the court's jurisdiction to award additional relief similarly terminated on that date. (*Id*. at p. 474; *In re Marriage of Benson* (1985) 171 Cal.App.3d 907, 913 [217 Cal.Rptr. 589].)

■ Appellant theorizes that her right to live in the family house while respondent made payments on it constitutes "family support": The child support aspect of the family support is appellant's right to live in the house while raising the minor children in her custody, and the spousal support aspect, as viewed by appellant, is respondent's obligation to make payments on the house even though it is community property. Appellant then reasons that because spousal support is an element of the "family support" she has been receiving, this implicitly allows the trial court to retain continuing jurisdiction to reinstate direct cash spousal support payments. Appellant's theory, though imaginative, is untenable.

By statute, family support is defined as an agreement which combines spousal support and child support, without specifying the separate amounts to be paid for either one, and which is enforceable in the same manner and to the same extent as a child support order. (Civ. Code, § 4811, subd. (d).) Here, it is obvious that there is no "family support" agreement combining child and spousal support. Instead, there is an interlocutory judgment containing one provision entitled "Support of the Minor Children," a separate provision entitled "Spousal Support," and other provisions addressing the division and disposition of the couple's property.

■ Appellant correctly notes that the trial court's decision to defer the sale of the family home and award temporary possession to the custodial parent is typically considered a form of child support. (*In re Marriage of Stallworth* (1987) 192 Cal.App.3d 742, 748 [237 Cal.Rptr. 829]; *In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361, 367 [148 Cal.Rptr. 550]; *In re*

*Marriage of Boseman* (1973) 31 Cal.App.3d 372 [107 Cal.Rptr. 232].) There are also noneconomic reasons for making such an award: " '[T]he subjective noneconomic impact on the family unit from being deprived of a home environment to which the children have become accustomed is sufficiently significant to allow the court to enter a conditional order . . . so long as undue hardship is not imposed on the noncustodial parent.' (*In re Marriage of Duke* (1980) 101 Cal.App.3d 152, 157 [161 Cal.Rptr. 444].) [¶] Thus, the trial court could award temporary use of the family home to the party having custody of minor children subject to whatever contingencies it deemed appropriate under the circumstances to protect the party not in possession." (*In re Marriage of Guthrie* (1987) 191 Cal.App.3d 654, 658-659 [236 Cal.Rptr. 583].) Civil Code section 4800.7 similarly provides that the purpose of the family home award is "to minimize the adverse impact of dissolution or legal separation on the welfare of the children."

In this case, the trial court found that the provisions of the interlocutory judgment which awarded child and spousal support were not inconsistent with the separate provision making a family home award. Based upon the legal concepts which we have listed above regarding disposition of the family home, we believe the trial court was correct in finding that the family home award was not spousal support but rather a means of preserving the family dwelling as a home environment for the Katzes' minor children, so long as they continued to live there.[4] Appellant was not led by the plain language of the interlocutory decree into believing that the family home award was spousal support in disguise; the 1978 decree explicitly makes the award contingent upon the continued residence of at least one of the Katz children in the house. Because the family home award was not spousal support, it could not be used as a basis for establishing continuing jurisdiction to reinstate the spousal support payments which, by the terms of the interlocutory judgment, terminated in September of 1980.

## 2. *Did the Trial Court Properly Order the Sale of the Family Residence?*

Appellant asks that we reverse the trial court's order to sell the family residence because the "clear intent of the parties" was to allow her to retain exclusive occupancy so long as any of her children "lived" with her—regardless of their age or the amount of time they spent there. Appellant also

---

[4] The trial court was equally correct in refusing to admit evidence of the parties' intent or beliefs to aid in interpreting the interlocutory judgment provisions relating to the family home, because extrinsic parol evidence is inadmissible for the purpose of explaining the terms of a judicial order. (*In re Marriage of Benson* (1985) 171 Cal.App.3d 907, 912 [217 Cal.Rptr. 589]; *In re Marriage of Wright* (1976) 54 Cal.App.3d 1115, 1121 [126 Cal.Rptr. 894].)

objects to the portion of the court's ruling requiring her to make mortgage payments on the family residence from February 1, 1987, until the time of sale.

Dissolution decrees which award temporary use of the family home to the parent having custody of minor children and authorize the deferred sale of the family home are controlled by Civil Code section 4800.7.[5] Subdivision (b) of section 4800.7 provides that "(1) A family home award may be modified or terminated at any time at the discretion of the court. [¶] (2) If the party awarded the temporary use of the family home remarries, or there is otherwise a change in circumstances affecting the economic status of the parties or the children on which the award is based, a rebuttable presumption, affecting the burden of proof, is created that further delay in the sale of the family home and division of the proceeds of the sale is no longer an equitable method of minimizing the adverse impact of the dissolution or legal separation on the welfare of the children."[6]

█ The Legislature has thus conferred continuing jurisdiction upon the courts to modify or terminate a family home award if this is warranted by a showing of changed circumstances. Because family home awards are meant to benefit minor children by providing them with a stable home environment, there is no need to perpetuate the award (and thereby deprive the nonoccupying spouse of his portion of the equity in the property) if contingencies arise which alleviate the children's need to remain in the house. (*In re Marriage of Howard, supra,* 184 Cal.App.3d at pp. 7-8.)

█ Here, the need to perpetuate the family home award has been obviated by changed circumstances. First, two of the three Katz children have reached the age of majority, and of these children, one lives permanently with respondent, and the other's college education is being paid for by respondent. Appellant cannot avail herself of the argument that she needs to maintain a five-bedroom family residence for those times when her adult children come to stay with her. This court recently rejected a similar argument, observing that a spouse cannot be ordered to make payments which will provide the other spouse with a residence for adult children who may use it only intermittently. (*In re Marriage of McElwee* (1988) 197 Cal.App.3d 902, 911 [243 Cal.Rptr. 179].) Second, respondent now has primary physical custody of the couple's 16-year-old minor son Jeffrey,

---

[5] Section 4800.7 was added by Statutes 1984, chapter 463, section 1, but by its terms applies retroactively to family home awards made before its effective date. (§ 4800.7, subd. (c).) The retroactive application of section 4800.7 was held to be constitutional in *In re Marriage of Howard* (1986) 184 Cal.App.3d 1 [228 Cal.Rptr. 813].

[6] These provisions may be altered by written agreement of the parties. (§ 4800.7, subd. (b).) There is no evidence in this case of such an agreement.

which the court found was the living arrangement that Jeffrey preferred. The court was entitled to weigh the nominal emotional impact that sale of the family house would have on an older teenager who only spent alternate weekends and half of his vacations there against the economic detriment of depriving respondent of his share of the sale proceeds that could be used to support Jeffrey and Vickie at his new home, which is within the school district where Jeffrey attends high school, and to pay for Ronald's college education. (See *In re Marriage of Stallworth, supra,* 192 Cal.App.3d at p. 748.)

In sum, the trial court did not abuse its discretion in determining that, on the balance, the factors mitigating in favor of an order to sell the house outweighed appellant's and the children's need to remain in the house. Once the court made this determination, it was further justified in finding that if appellant wished to remain in the house for several more months (even though Jeffrey was living primarily with his father), respondent would have the right to be reimbursed for the mortgage payments he made during this period from appellant's share of the sale proceeds, because it would be reasonable for respondent to expect reimbursement under the circumstances. (See *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85 [154 Cal.Rptr. 413, 592 P.2d 1165].)

3. *Does Appellant Have the Right to Receive Child Support Payments for Jeffrey?*

Under California law, both parents have an equal responsibility to support and educate their minor children, regardless of custody, taking into account each parent's earnings and earning capacity. (Civ. Code, § 196.) Generally, a parent's support obligation is satisfied by caring for and maintaining the child in his or her custody. (*In re Marriage of Rasmussen* (1984) 155 Cal.App.3d 805, 812 [202 Cal.Rptr. 343].) This general rule is of course easy to apply when only one parent has physical custody. The rule regarding child support is less clear when the trial court awards joint legal custody to both parents, "primary physical custody" to one of the parents and secondary physical custody to the other parent, as the trial court did here.

■ Civil Code section 4700 provides that "In any proceeding where there is at issue the support of a minor child . . . the court may order either or both parents to pay any amount necessary for the support, maintenance and education of the child." We believe that the language of section 4700 is broad enough to cover the complicated custodial award that was made in this case. The statute certainly does not foreclose the possibility that, in a proper case, the trial court may award child support to a parent who has

secondary physical custody of a minor child but who lacks the financial resources to adequately care for the child.[7]

When additional child support beyond the statutory minimum required by the Agnos Act (Civ. Code, § 4720 et seq.) is at issue, the trial court's award must be based on statutory and judicial guidelines. (Civ. Code, § 4724.) In particular, Civil Code section 246 directs the trial court to consider many diverse factors, such as the parents' earnings and assets (including separate property), and their ability to engage in employment without interfering with care of the child, the duration of the marriage, and the parties' standard of living. Civil Code section 4700, subdivision (a), permits the court to order payment of amounts that are *"necessary"* for the child's support, maintenance and education. This section does not appear to be aimed at insuring that children are provided with luxurious lifestyles. A determination under section 4700, subdivision (a) lies within the sound discretion of the trial court. (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941].)

In this case, the trial court did not exercise its discretion, although there was ample evidence on which to base a child support determination, because it apparently concluded that it lacked the power to make such a determination absent a benediction from the Legislature or an appellate court. We must therefore reverse the court's decision that it lacked power to make a child support order, and remand the case for a factual determination of whether this is in fact a proper case in which to award additional child support to a parent who has secondary custody. The trial court should bear in mind that the policy of this state is to encourage both parents to share the rights *and the responsibilities* of child rearing. (Civ. Code § 4600, subd. (a).) Furthermore, while section 246 authorizes the court to consider various circumstances of the respective parties, that section does not authorize the court to relieve entirely a financially capable parent of his or her obligation to support a minor child. (See *Armstrong v. Armstrong, supra,* 15 Cal.3d at p. 948.)

## DISPOSITION

The judgment is reversed insofar as the trial court decided that it lacked the power to award child support to a parent with secondary physical

---

[7] The Agnos Act permits the trial court to take shared physical custody into account in determining each parent's pro rata share of the "mandatory minimum" child support award. (Civ. Code, § 4727.) The statutory minimum award is intended to provide for the supported child's bare essential living expenses, such as food, clothing and shelter. (Civ. Code, § 4723.) Given the financial resources of the parties and appellant's arguments in this case, it is evident that their concern here is *not* with providing the bare essentials for Jeffrey.

custody. The case is remanded for the trial court to determine whether this is a proper case in which to award child support to appellant. In all other respects, the judgment is affirmed.

Both parties' requests for attorney's fees are denied, and each side shall bear its own costs on appeal.

Ashby, Acting P. J., and Kennard, J., concurred.